Sammy HOOPER and Carolyn Benge, Individually, and as Representatives of the Estate of Ureta Hooper, Appellants,

v.

Dr. C.F. SANFORD, III, Dr. Ronald L. Thomas, Dr. William Hyman, and East Texas Medical Center, Appellees.

No. 12-97-00053-CV.

Court of Appeals of Texas, Tyler.

Nov. 26, 1997.

Rehearing Overruled Feb. 4, 1998.

John D. Sloan, Longview, for appellant.

Douglas R. McSwane, Tyler, Stephen W. Johnson, Dallas, Don Kent, Ken W. Good, Dick Davis, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Sammy Hooper and Carolyn Benge, Individually and as Representatives of the Estate of Ureta Hooper Deceased ("Hooper") appeal the trial court's dismissal of their medical malpractice suit against Dr. C.F. Sanford, III, Dr. Ronald Thomas, Dr. William Hyman, and East Texas Medical Center (sometimes hereinafter collectively referred to as (" the Doctors"). In his sole point of error, the Hoopers complain that the trial court erred in dismissing his lawsuit due to his failure to give the Doctors sixty days notice prior to filing suit as required by the Medical Liability and Insurance Improvement Act ("the Act").[1] He argues that the dismissal was singular because abatement is the only proper remedy when a plaintiff fails to give notice. We will affirm.

A brief explanation of a change in law affecting the Act is necessary to understand the contentions of the parties. In 1995, the legislature amended the Civil Practice and Remedies Code in the following manner: each defendant is joint and severally liable for the damages caused by other defendants only if the percentage of responsibility attributed to the defendant is greater than 50 percent. Pursuant to the prior statute, each liable defendant was jointly and severally liable for the damages recoverable by the claimant if the percentage of responsibility attributed to the defendant was greater than

---

1. TEX.REV.CIV. STAT ANN. art. 4590i (Vernon Supp. 1996).

20 percent. Obviously, the new statute works to the plaintiff's detriment and to the defendant's benefit. This change in joint and several liability law applies to claims filed under the Act if the cause of action accrued before September 1, 1995, but was not filed until September 1, 1996 or later. TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon Supp.1996). Hooper's cause of action accrued on or about December 31, 1994, and he filed his original petition on August 30, 1996. Consequently, the new law would not apply to Hooper's lawsuit.

The Act requires a claimant to give notice to potential defendants at least sixty days before filing a malpractice suit. TEX.REV.CIV. STAT. ANN. art. 4590i, § 4.01 (Vernon Supp. 1996). Although the Hoopers pleaded in their petition that they gave the statutory notice to the Doctors before filing suit, it is undisputed that they did not. It is also undisputed that Hooper filed suit on August 30, 1996, in order to escape the effects of the new joint and several liability provision; and that to avoid the application of the "old law," the Doctors sought dismissal by the trial court. The issues before us are whether the trial court erred in dismissing Hooper's suit, and if the error, if any, was harmless.

■ The parties have cited no authority, and we have been unable to locate any case-law which addresses the particular issue of dismissal versus abatement when a plaintiff has adequate time to refile his lawsuit. It is well-settled law in Texas that a plaintiff's failure to give sixty days notice to defendants should result in abatement, not dismissal. *Schepps v. Presbyterian Hospital of Dallas,* 652 S.W.2d 934, 938 (Tex.1983). The Doctors attempt to distinguish that holding, however, because in *Schepps,* when the defendants filed their motion for summary judgment, the statute of limitations had run and the plaintiff was barred from filing another suit. In the instant case, when the Doctors filed their Motions for Dismissal, limitations had not yet run against Hooper's claim. He had the

opportunity to give notice, extending his statute of limitations by seventy-five days,[2] and then file suit sixty days after notice, as provided by the Act.[3] The question, then, is whether it was an abuse of the trial court's discretion to dismiss Hooper's lawsuit even though he was not barred from refiling.

The Supreme Court in *Schepps* held that although notice is mandatory under the Act, to bar prosecution for failure to give that notice would constitute an undue restriction of a claimant's right to maintain a lawsuit. *Id.* The Court explained that the statute itself does not specify the consequences for noncompliance. It concluded that the purpose of the notice requirement, to encourage pre-suit negotiations so as to avoid the expense of litigation, is better served by abating an action filed without notice for the duration of the statutory notice period to allow the parties to negotiate, than by dismissing the action altogether. *Id.* In *DeCheca v. Diagnostic Center Hospital, Inc.,* 852 S.W.2d 935 (Tex.1993), the Supreme Court answered certified questions from the Fifth Circuit Court of Appeals. The questions required interpretation of the notice and limitations provisions of the Act. Without restricting its answer to certain fact scenarios, the Court clarified the remedy for failure to give notice. The Court held that "the *only* remedy for failure to provide the statutory notice remains abatement." *Id.* at 938 (emphasis ours). It underscored its position by further stating that "abatement is the sole remedy for failure to serve timely notice of a health care liability claim under the Act." *Id.* at 939; *see also Permanente Medical Association of Texas v. Johnson,* 917 S.W.2d 515, 517 (Tex. App.—Waco 1996, no writ)(in a case which did not involve a statute of limitations problem, the court nonetheless recognized that abatement was the sole remedy for failure to give statutory notice). We hold that the trial court erred when it dismissed Hooper's cause of action, regardless of his opportunity to refile the lawsuit.

---

**2.** Notice given in compliance with the Act tolls to statute of limitations to and including a period of 75 days following the giving of the notice. TEX. REV.CIV. STAT. ANN. art. 4590i, § 4.01(c).

**3.** This is, in fact, what he did. On December 31, 1996, before the hearing and ruling on the Doctors' Motions to Dismiss, Hooper gave statutory notice to the Doctors, and subsequently filed suit in a different court.

The next issue before us is whether the error is reversible. Rule 44 of the Rules of Appellate Procedure states the following:

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1) probably caused the rendition of an improper judgment; or

(2) probably prevented the appellant from properly presenting the case to the court of appeals.

Tex.R.App. P. 44.1.

We acknowledge that if Hooper had not given the Doctors notice of suit by December 31, 1996, as he did, the court's dismissal would have constituted reversible error since Hooper's lawsuit would have been forever barred. *See Kimball v. Brothers,* 712 S.W.2d 538, 540 (Tex.App.—Waco 1986), *affirmed,* 741 S.W.2d 370, 372 (Tex.1987)(the law does not provide the option of giving notice *after* the two-year statutory period has expired). But Hooper protected his cause of action by giving notice, on the chance that the trial court would dismiss his case, and he was able to refile his malpractice suit before the statute of limitations had run.

■ Hooper argues, though, that the dismissal constitutes reversible error in spite of his ability to file a new lawsuit. He contends that the dismissal caused him to suffer the loss of a substantive right (namely, the provisions of the old law on joint and several liability), thus causing harm. He refers to East Texas Medical Center's argument that if the court abated the suit rather than dismissed it, "legal rights that are very substantive ... [would be] taken away from the Defendants in this case by Plaintiffs' failure to follow the original statute." Hooper also calls our attention to one of the Doctor's briefs, in which he states that "Appellants' argument does not consider the profound effect Appellants' actions could have on the liability apportionment among Appellees...." It is Hooper's contention that the Doctors rebut their own argument that he suffered no harm by what amounted to the court's decision to apply the new law to Hooper's malpractice suit. Hooper submits that substantive rights do not belong exclusively to the Doctors. If the substantive rights of the Doctors are implicated, it follows that his substantive rights are, as well. He further contends that his ability to recover may depend entirely on which law controls regarding proportional liability in a multi-defendant case.

On appeal, the appellant has the burden to demonstrate harm. *Lorusso v. Members Mut. Ins. Co.,* 603 S.W.2d 818, 820 (Tex. 1980). In the instant case, Hooper does not specifically argue either the first or second prong of Rule 44.1 [previously Rule 81(b)(1) ]. Under the first prong of the rule, we may reverse a judgment on appeal only if the error "probably caused the rendition of an improper judgment." As we stated earlier, Hooper maintains that his ability to recover in a malpractice suit may depend entirely on the joint and several liability law applied to his case. This may or may not be true, but the question of harm must be determined from an examination of the record as a whole. *Id.* at 821. In this case, there is nothing in the record to show that any of the Doctors are insolvent, or that Hooper will probably be adversely affected by the application of the new joint and several liability law. We cannot say that the trial court's error more than likely caused the rendition of an improper judgment, since there is no evidence that Hooper may be prevented from recovering the total amount of his damages.

The purpose of the second prong of the 44.1 harm test is to provide a new trial when a party, due to no fault of its own, is unable to develop the record below, resulting in the appellate court's inability to consider the appellant's arguments. *See, e.g. Rogers v. Rogers,* 561 S.W.2d 172, 173–74 (Tex.1978)(appellant unable to obtain a statement of facts); *Mountain Corp. v. Rose,* 737 S.W.2d 22, 24–25 (Tex.App.—El Paso 1987, writ denied)(no record made of default proceedings); *Groves v. Rosenthal,* 371 S.W.2d 792, 793 (Tex.Civ. App.—Houston 1963, writ ref'd n.r.e.)(trial court failed to make additional findings of fact relating to ultimate and controlling issues). In this case, there is nothing in the trial court's action that in any way prejudiced Hooper's ability to have this court review his point of error.

Because Hooper failed to show harm, we overrule his sole point of error and affirm the trial court's order of dismissal.