**Opinion issued July 26, 2018**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-17-00513-CV

———————————

**PATRICK MCSHANE, Appellant**

**V.**

**CLAUDIA MCSHANE, AS NEXT FRIEND OF J. M., Appellee**

---

**On Appeal from the 22nd District Court**
**Comal County, Texas**
**Trial Court Case No. C2000-0491A**

---

### O P I N I O N

This is an appeal from an order granting an application for a writ of scire facias to revive a dormant judgment.[1] On September 21, 2001, the trial court

---

[1]  The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. Misc. Docket No. 17-9066 (Tex. June 20, 2017); *see* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any

signed its final judgment, which granted Claudia McShane a divorce from her husband, Patrick McShane, and awarded her damages on her claim for intentional infliction of emotional distress.[2] Other than filing an abstract of judgment, Claudia did not attempt to collect on the judgment, and the judgment became dormant. *See* TEX. CIV. PRAC. & REM. CODE § 34.001(a). On September 20, 2013, Claudia filed an application for a writ of scire facias to revive the judgment. *See id.* § 31.006. The trial court granted Claudia's application, impliedly finding that the judgment was rendered on September 21, 2001.

On appeal, Patrick contends that there is legally insufficient evidence to support the trial court's implied finding. He contends that the trial court's docket sheet and signed final judgment show that the trial court orally rendered judgment on February 16, 2001, making Claudia's application untimely filed. *See id.* We disagree.

Although the trial court announced that it had decided to grant the divorce and award Claudia a judgment for damages on February 16, the trial court did not actually render judgment on February 16 because numerous issues remained pending as of that date. The trial court did not officially announce its resolution of

---

conflict between precedent of that court and this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2] Because the parties share the same last name, for clarity, we will refer to them by their first names.

all the issues in the lawsuit—including the issues that remained pending as of February 16—until it signed its final judgment on September 21, 2001. We therefore hold that Claudia timely filed her application for a writ a scire facias and, accordingly, affirm the trial court's order reviving the dormant judgment.

## Background

While stationed with the military in Germany in 1984, Patrick McShane met and married Claudia Maria McShane, a German citizen.[3] They moved to the United States in 1985 and to Texas in 1986, where they had two children—Robert, born in August 1986, and Joan, born in January 1988.[4]

In February 2000, Claudia learned, through a counselor, that Joan had accused Patrick of sexual abusing her.[5] Claudia moved out of the house with Robert and Joan and filed a petition for divorce. In her petition, Claudia sought numerous forms of relief, including sole managing conservatorship of Robert and Joan, a disproportionate share of the community property, and child support. She also asserted, as Joan's next friend, a claim for intentional inflectional of emotional distress, seeking actual and exemplary damages. Patrick filed a counter-petition for divorce, which sought numerous forms of relief as well, including the perfection of

---

[3]  *McShane v. McShane*, No. 03-01-00721-CV, 2003 WL 1338722, at *1 (Tex. App.—Austin Mar. 20, 2003, no pet.) (mem. op.).

[4]  *Id.* To protect their privacy, we refer to the McShanes' children by pseudonyms.

[5]  *Id.* at *2.

a purchase money lien on Claudia's homestead and the return of property alleged to be separate.

The case was tried to a jury. The jury found for Claudia on her IIED claim and awarded her $934,400 in actual and exemplary damages.

On February 16, 2001, the trial court held a post-trial hearing. The trial court's docket sheet from that day indicates that it heard a number of motions, including Patrick's motion to impose a purchase money lien on Claudia's homestead, which the trial court held in abeyance; Patrick's motion to compel Claudia to release Patrick's separate personal property, which the trial court granted; and Claudia's motion for entry of final judgment, with respect to which the trial court made a number of rulings. Specifically, the docket sheet indicates that the trial court ruled that Claudia be granted a divorce and appointed managing conservator of the children, Patrick be appointed possessory conservator with no access to the children, Patrick pay for child support and the children's health insurance, the community personal property and debts be divided disproportionately in Claudia's favor, and the community real property be sold and the proceeds divided. The docket sheet further indicates that the trial court ruled that Claudia be awarded a judgment for actual and exemplary damages in accordance with the jury's verdict: "[Claudia] awarded jdmt for damages, exemplary damages as awarded by jury."

4

On June 22, 2011, the trial court held another post-trial hearing. At the June 22 hearing, the trial court heard eight motions filed by Patrick: (1) a motion for the appointment of a receiver, (2) a motion for the entry of a final decree of divorce, (3) a motion to require the release of his separate personal property, (4) a motion for sanctions, (5) a motion to require the separation of Claudia's attorney's fees and expenses, (6) a motion to impose a purchase money lien on Claudia's homestead, (7) a motion to impose an equitable lien on Claudia's separate property, and (8) a motion to approve the release and payment of appellate attorney's fees and appellate record expenses.[6] At the close of the June 22 hearing, Patrick and Claudia "agreed" that "it would not be appropriate" for the trial court "to enter the final decree of divorce" until it ruled on Patrick's motions for the two liens.

On June 27, 2001, the trial court signed an order on the motions heard at the June 22 hearing. The trial court "conditionally granted" Patrick's motion for the entry of a final divorce decree, "subject to" its rulings on the two lien motions, and ordered that the parties "continue to confer in an attempt to reach agreement as to the form of the final decree of divorce." The trial court further ordered that the parties submit a proposed final decree of divorce within ten days of its rulings on the lien motions.

---

[6]     The trial court also heard Claudia's motion for contempt.

On July 10, 2001, the trial court denied both of Patrick's motions for liens.

On September 21, 2001, the trial court signed its final judgment. The judgment was divided into two parts: (1) a final divorce decree and (2) a final judgment on Claudia's IIED claim.

The final decree of divorce ordered that (1) Claudia be granted a divorce from Patrick and that their marriage be dissolved on the ground of insupportability, (2) Claudia be appointed sole managing conservator of Robert and Joan and Patrick pay for child support and for Robert and Joan's health insurance, (3) the community personal property be divided as specified, (4) the community real property be sold as specified, (5) Claudia and Patrick each own certain separate personal property as specified, (6) Claudia be awarded court costs, and (7) all relief requested but not expressly granted be denied. The final paragraph of the divorce decree, entitled "Date of Judgment," stated as follows:

> This divorce judicially PRONOUNCED AND RENDERED in court at New Braunfels, Comal County, Texas, on February 16, 2001, and further noted on the court's docket sheet on the same date, but signed on the date indicated below, immediately above the signature of the Court.

In the final judgment, the trial court stated that "judgment should be rendered on the verdict in favor of [Claudia] and against Patrick . . . ." The trial court then ordered that Claudia be awarded a judgment in accordance with the jury's verdict:

6

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that [Claudia] have and recover from [Patrick] judgment in the amount of NINE HUNDRED AND THIRTY-FOUR THOUSAND AND FOUR HUNDRED AND NO/100 DOLLARS ($934,400.00), together with interest (i.e., prejudgment interest) on the sum of $650,400.00 (Plaintiff's actual damages) at the rate of twelve percent (12%) per annum, compounded annually, from May 25, 2000 (the date this cause was filed) to the date this judgment is signed and with interest (i.e., post judgment interest) on said sum of $934,400.00 at the rate of twelve percent (12%) per annum, compounded annually, from the date this judgment is signed until paid, for all of which let execution ISSUE.

On October 10, 2001, the clerk issued an abstract of judgment. The abstract stated: "[Claudia,] as next friend of [Joan], a minor, recovered judgment on the 21st day of September, 2001, against [Patrick] for the sum of $934,400.00." The abstract further stated that prejudgment interest accrued "on the sum of $660,400.00 . . . from May 23, 2000 to [the] judgment date."[7]

Claudia did not otherwise attempt to collect on the judgment for money damages, and the judgment became dormant. Years later, on September 20, 2013, Claudia filed an application for a writ of scire facias to revive the dormant judgment. Patrick filed a motion and briefing in opposition, arguing that Claudia's application was untimely filed. In May 2017, without issuing any findings of fact

---

[7]  We note a slight discrepancy: The abstract of judgment identifies the date on which suit was filed as May 23, 2000, whereas the final judgment identifies the date as May 25, 2000.

or conclusions of law, the trial court signed an order that granted the application and ordered the issuance of the writ. Patrick appeals.

## Scire Facias

In his sole issue, Patrick argues that the trial court erred in reviving the judgment because there is insufficient evidence that Claudia's application for the writ was timely filed. According to Patrick, the evidence shows that the trial court rendered judgment in February 2001, making Claudia's deadline to file her application February 2013. Claudia responds that the evidence shows that the trial court rendered judgment in September 2001, making her deadline September 2013.

### A.    Applicable law and standard of review

When, as here, "neither party requests findings of fact and conclusions of law following a nonjury trial, all fact findings necessary to support the trial court's judgment are implied." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). "When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Under the legal-sufficiency standard, we must credit evidence that supports the judgment if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168

S.W.3d 802, 827 (Tex. 2005). Evidence is legally insufficient to support an implied finding when (1) the record bears no evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *See Bradberry*, 526 S.W.3d at 480. In reviewing the factual sufficiency of the evidence, we consider all the evidence and will set aside an implied finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Under the Civil Practice and Remedies Code, "[i]f a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant . . . ." TEX. CIV. PRAC. & REM. CODE § 34.001(a). Once dormant, "execution may not be issued on the judgment unless it is revived." *Id.*

To revive a dormant judgment, a judgment creditor may file an application for a writ of scire facias.[8] *Id.* § 31.006. The creditor must file the application "no later than two years after the judgment becomes dormant." *Harper v. Spencer & Assocs., P.C.*, 446 S.W.3d 53, 55 (Tex. App.—Houston [1st Dist.] 2014, pet.

---

[8] Alternatively, the judgment creditor may file an action of debt. TEX. CIV. PRAC. & REM. CODE § 31.006.

denied); *see* TEX. CIV. PRAC. & REM. CODE § 31.006. Thus, the Civil Practice and Remedies Code "has the effect of creating a twelve-year residual limitations period for final judgments." *Harper*, 446 S.W.3d at 55.

"In deciding whether a judgment should be revived, the trial court is without discretion to revive a judgment if the statutory requirements are satisfied." *Webb v. Yorkshire W. Capital, Inc.*, No. 05-16-00390-CV, 2017 WL 677825, at *2 (Tex. App.—Dallas Feb. 21, 2017, pet. denied) (mem. op.). A scire facias proceeding is normally "a non-evidentiary hearing for which there is no need for findings of fact and conclusions of law." *Cadle Co. v. Rollins*, No. 01-09-00165-CV, 2010 WL 670561, at *2 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.). But if "the date of rendition of judgment is disputed, the trial court may consider evidence relevant to the date of rendition." *Cadles of Grassy Meadow, II, LLC v. Herbert*, No. 07-09-00190-CV, 2010 WL 1705307, at *3 (Tex. App.—Amarillo Apr. 27, 2010, no pet.) (mem. op.).

"The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made." *S&A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (per curiam) (quoting *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex. 1976)). "Generally, a judgment is rendered when the decision is officially announced orally in open court, by memorandum

filed with the clerk, or otherwise announced publicly." *Garza v. Tex. Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 6 (Tex. 2002).

However, "to be an official judgment, the trial court's oral pronouncement must indicate an intent to render a full, final, and complete judgment at that point in time." *Gamboa v. Gamboa*, 383 S.W.3d 263, 270 (Tex. App.—San Antonio 2012, no pet.); *see Herbert*, 2010 WL 1705307, at *4. Thus, a trial court's oral pronouncement does not constitute a rendition of judgment if "it announces . . . an 'intention to render judgment in the future.'" *State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) (quoting *Leal*, 892 S.W.2d at 858). Nor does a trial court's pronouncement constitute a rendition of judgment if essential issues remain pending when the pronouncement is made. *Gamboa*, 383 S.W.3d at 270–71 (holding that trial judge's oral statement that she was "granting the divorce effective today" and "approv[ing] the settlement agreement" did not render judgment when she also mentioned "get[ting] this final agreement done" and setting deadline for parties to complete agreement when record showed there were many issues essential to divorce judgment still pending at time of statement). Additionally, "when there is a question concerning the date judgment was rendered, the date the judgment was signed prevails over a conflicting docket sheet entry." *Garza*, 89 S.W.3d at 7.

**B.** **The trial court properly revived the dormant judgment because Claudia timely filed her application**

Patrick argues that the trial court erred in granting Claudia's application because Claudia failed to file it within twelve years of the judgment's rendition. Patrick contends that the judgment was rendered in February 2001 when the trial court orally announced its decision to grant the divorce and award Claudia a judgment for damages. Claudia contends that the judgment was rendered on September 21, 2001 when the trial court signed its final judgment. Claudia did not file her application until September 20, 2013. Thus, in granting Claudia's application, the trial court impliedly found that the judgment was rendered on September 21, 2001. We therefore consider whether there is sufficient evidence to support the trial court's implied finding. We hold that there is.

When the trial court orally announced its decision to grant the divorce and award Claudia a judgment for damages at the February 16 hearing, the trial court did not render a "full, final, and complete" judgment. At the time, there were a number of pending issues, the resolution of which was necessary to render a final judgment disposing of all parties and claims. The docket sheet itself notes that two motions were "held in abeyance": (1) a motion for severance filed by one of the parties (the docket sheet does not say who) and (2) Patrick's motion to impose a purchase money lien on Claudia's homestead, which requested relief that Patrick originally requested in his counter-petition.

And although the docket sheet indicates that the trial court ruled that Patrick pay for child support and the children's health insurance, that the community personal property and debts be divided disproportionately in Claudia's favor, and that the community real property be sold and the proceeds divided, the docket sheet does not specify the details of those rulings. That is, the docket sheet does not specify how much child support Patrick had to pay, the type of health insurance Patrick had to provide, the pieces of community personal property each spouse was awarded, or when and for how much the community real property had to be sold. Indeed, the docket sheet does not even specify the amount of damages awarded to Claudia or the rate at which interest on those damages will accrue. These and other issues were not resolved until later, when the trial court signed subsequent orders and, ultimately, its final judgment.

After the February 16 announcement, the trial court issued an order on June 27 that:

- denied Patrick's motion for the appointment of a receiver,

- conditionally granted Patrick's motion for entry of a final divorce decree, subject to the trial court's rulings on Patrick's motions for liens, which the order stated that the trial court had "taken under advisement,"

- denied, in part, Claudia's motion for contempt,

- ordered that Patrick pay Claudia $8,450, representing 26 weekly payments of $325 "due and owing" Claudia and "continue to make" weekly $325 payments to Claudia until further ordered by the trial court,

- ordered that Patrick "continue to timely pay" other community debts that he had paid since Claudia's filing of the divorce action,

- ordered that Patrick pay $4,252.16 "to bring the mortgage payments current on the martial residence" and continue to make "the monthly mortgage payments . . . due and owing . . . for the mortgage . . . on the martial residence,"

- ordered that Patrick pay $1,619.40 "to bring current the mortgage" on another residence and continue to pay "the monthly mortgage payments . . . due and owing for the mortgage" on that residence,

- ordered that the parties list the marital residence and other residence for sale at specified prices, and

- ordered that Patrick "make available . . . the sum of $7,500 to be used exclusively for improvements and repairs to the martial residence . . . ."

And in its July 10 order, the trial court denied Patrick's motion to impose a purchase money lien against Claudia's homestead and his motion to impose an equitable lien against Claudia's separate property.

The trial court's September 21 final judgment represents a "full, final, and complete" judgment. It resolved the remaining issues in the case. Among other things, it specified the amount of child support Patrick had to pay, the type of health insurance Patrick had to provide, and the pieces of community personal property each spouse was awarded. It also specified further requirements concerning the sale of the community real property and stated the exact amount of damages awarded to Claudia. In the final judgment, the trial court also stated that "judgment should be rendered on the verdict in favor of [Claudia] and against

14

Patrick," which indicates that the trial court did not attempt to render judgment for Claudia at the February 16 hearing but rather announced its intent to render judgment for Claudia in the future. *See Naylor*, 466 S.W.3d at 788 (trial court's pronouncement does not constitute rendition of judgment if it announces intent to render judgment in future).

Against all this, Patrick contends that the trial court's February 16 docket sheet entry constitutes a rendition of judgment under Section 101.026 of the Family Code. According to Patrick, under Section 101.026, in a suit affecting the parent-child relationship (SAPCR), the trial court may render judgment on its docket sheet. *See* TEX. FAM. CODE § 101.026. Patrick observes that the trial court's final divorce decree states that the divorce was "PRONOUNCED AND RENDERED . . . on February 16, 2001." Patrick contends that this statement shows that the trial court intended to render judgment on February 16 under Section 101.026. We disagree.

Assuming without deciding that this suit is a SAPCR in which judgment could have been rendered on the trial court's docket sheet under Section 101.026 of the Family Code, the trial court's February 16 docket sheet still does not constitute a rendition of judgment; as discussed above, numerous issues remained pending when the trial court made its oral rulings on February 16. Moreover, the statement in the trial court's final divorce decree refers to the divorce but not to the

judgment for damages. In fact, the portion of the final judgment addressing the judgment for damages states that "judgment should be rendered on the verdict in favor of [Claudia] and against Patrick." "Ordinarily, when there is a question concerning the date judgment was rendered, the date the judgment was signed prevails over a conflicting docket sheet entry." *Garza*, 89 S.W.3d at 7. Thus, the portion of the final judgment stating that "judgment should be rendered" on Claudia's IIED clam in accordance with the jury's verdict prevails over the conflicting docket sheet entry, to the extent a conflict actually exists.

We hold that there is sufficient evidence to support the trial court's implied finding that it rendered judgment on September 21, 2001. Accordingly, we overrule Patrick's sole issue.

## Conclusion

We affirm the trial court's order.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.