COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



IN THE INTEREST OF L.A.-K.,
A CHILD.

§ No. 08-18-00066-CV

§ Appeal from the

§ 388th District Court

§ of El Paso County, Texas

(TC# 2015DCM8567)

## O P I N I O N

This is an appeal from an order in a suit to modify the parent-child relationship. Appellant R.A.K. ("Father") asserts that the trial court abused its discretion by designating appellee A.M. ("Mother") as the person with the exclusive right to designate the primary residence of the child, L.A.-K., and by ordering Father to pay child support and medical child support. Father also asserts that the trial court committed procedural errors both before and after entry of the final order from which he appeals. We affirm in part and reverse and remand in part.

## BACKGROUND

Father's and Mother's rights and obligations concerning L.A.-K. were originally governed by an agreed consent order entered by a Maryland court in April 2014. Pursuant to that order, they shared custody of the child so that she spent six months with one parent and then six months with the other. At the time, Mother lived in El Paso and Father lived in Maryland. Father subsequently moved to the State of Washington.

In November 2015, Father filed a petition to modify the parent-child relationship in a Washington court. Father requested that he be given the right to designate the child's primary residence, that Mother be granted visitation according to the standard possession order, and that Mother be ordered to pay child support. In December 2015, Mother filed an original petition seeking to modify the Maryland order in a Texas court. Like Father, Mother requested that she be given the right to designate the child's primary residence, that Father be granted visitation according to the standard possession order, and that Father be ordered to pay child support. Father's petition was ultimately transferred to the El Paso court, which assumed exclusive jurisdiction over the case.

On December 21, 2016, an associate judge signed temporary orders recommending that the terms of the Maryland order be kept in force. The matter was set for final hearing on July 7, 2017. At the conclusion of an evidentiary hearing conducted on that date, the court stated from the bench that it was going to name Father and Mother joint managing conservators. It also stated that it was going to give Father the exclusive right to designate the child's primary residence, but that such residence would be restricted to El Paso County, Texas. When Father informed the court that he was not able to relocate to El Paso, the court stated that it would reconsider its ruling and would inform the parties of its decision.

On September 8, 2017, Father filed a motion to reconsider and to reopen the evidence. He alleged that he did not rebut some of Mother's assertions at the July 7, 2017 hearing "[d]ue to time constraints, the repeated delays, and the desire to resolve the matter before the start of the child's first grade year in school[.]" He also alleged that the court "did not hear adequate evidence about the feasibility of a move to El Paso by [Father] to render an order that conditions his conservatorship rights upon such a move." The court denied the motion on September 13, 2017.

Four months later, on January 19, 2018, Mother filed an Original Petition In Suit To Modify the Parent-Child Relationship, seeking to modify the court's July 7, 2017 bench ruling. Ten days later, Mother obtained a temporary restraining order prohibiting Father from removing the child from Mother or from El Paso County. Father moved to quash the temporary restraining order and to dismiss the petition to modify, asserting that no order subject to modification had yet been entered. The motion to quash and the motion to dismiss were heard on March 2, 2018, at which time both parties appeared through their respective attorneys. By order dated April 6, 2018, the court granted the motion to quash but denied the motion to dismiss.

By letter dated March 2, 2018 (but filed March 8, 2018), the court issued a ruling appointing the parents joint managing conservators, naming Mother as the person with the exclusive right to designate the child's primary residence ("primary conservator"), giving Father visitation according to the standard possession order, and directing Father to pay child support "at the guideline amount[.]" The letter stated that entry of the court's judgment, by submission, was set for April 11, 2018. That hearing date was subsequently reset by the court to May 14, 2018.

On April 12, 2018, Father's attorney filed a motion to withdraw as counsel. In that motion, the attorney informed Father that the entry of judgment hearing was set for May 14, 2018. The order granting the motion to withdraw also reflected that the entry of judgment hearing date was May 14, 2018. In addition, on April 30, 2018, Father filed a motion for continuance which also identified the entry of judgment date as May 14, 2018. The court did not rule on that motion but, rather, signed a final order on May 7, 2018, a week before the noticed entry of judgment date.

On May 14, 2018, Father, acting *pro se*, filed a notice of appeal from the May 7, 2018 order ("Final Order"). On June 5, 2018, he filed a "Verified Motion To Modify Judgment/Order In Suit To Modify Parent Child Relationship On Grounds Of Clear Error Of Facts." On June 25, 2018,

3

Father filed an "Emergency Verified Motion To Enforce And Clarify Order In Suit To Modify Parent Child Relationship." Both motions came on for hearing on July 10, 2018, at which time Mother objected that the trial court had lost jurisdiction because Father had already filed a notice of appeal. The court declined to proceed with the hearing, stating that it needed to look into the jurisdictional issue first. The record does not contain any ruling by the trial court on the jurisdictional issue and does not reflect that the court took any further action on Father's motion, despite Father's repeated written requests for a ruling.

## ISSUES

Father raises seven issues, asserting that the court abused its discretion by (1) modifying conservatorship, without due process of law, less than one year after father was appointed primary conservator; (2) entering temporary orders, without due process of law, denying father access to and possession of the child; (3) ordering current and retroactive child support without a hearing and without evidence of Father's income; (4) ordering that medical child support be withheld from Father's paychecks even though he provides health insurance for the child; (5) determining, without a hearing, that it is in the child's best interest to name Mother primary conservator; (6) discriminating against Father by ruling that he would have the exclusive right to determine the child's primary residence but restricting that residence to El Paso, knowing that Father lives in Washington, and then ordering instead that Mother has the exclusive right to determine the child's primary residence without any geographic restriction; and (7) refusing to hear Father's motion to modify the May 7, 2018 order and subsequent motions to enforce access and possession.

## STANDARD OF REVIEW

A trial court's determination of what is in the best interest of the child "will be reversed only when it appears from the record as a whole that the court has abused its discretion." *Gillespie*

4

*v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). An order granting child support is likewise reviewed for abuse of discretion. *In re J.M.M.*, 549 S.W.3d 293, 298–99 (Tex. App.—El Paso 2018, no pet.).

A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding principles, or when it fails to correctly analyze the law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re M.V.*, 583 S.W.3d 354, 360 (Tex. App.—El Paso 2019, no pet.). Determining whether the trial court abused its discretion involves a two-pronged inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion? and (2) did the trial court err in its application of discretion? *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.).

In the absence of findings of fact and conclusions of law, we imply all necessary findings of fact to support the trial court's order. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 563. If, however, the appellate record includes a reporter's record, the trial court's implied findings may be challenged for legal and factual sufficiency. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 563. Such sufficiency challenges are considered as factors relevant to whether the trial court abused its discretion rather than independent grounds of error. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 562.

Whether there is legally sufficient evidence is determined by "view[ing] the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). "When reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *In re M.V.*,

583 S.W.3d at 361. If there is a conflict in the evidence, we must presume that the fact finder resolved the inconsistency in favor of the order if a reasonable person could do so. *Id.* If there is evidence of a substantive and probative character supporting the trial court's decision, we cannot conclude that the court abused its discretion in reaching that decision. *Id.*

## DISCUSSION

*Modifying the July 7, 2017 bench ruling without notice and hearing*

In his first issue on appeal, Father contends that the trial court abused its discretion by modifying its July 7, 2017 bench ruling without holding an evidentiary hearing. Father specifically asserts that the court rendered judgment naming him primary conservator and could not thereafter change that ruling without hearing additional evidence. The flaw in this argument, however, is that the court did not render judgment on July 7, 2017.

"The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made." *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (quoting *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex. 1976)). "[T]o be an official judgment, the trial court's oral pronouncement must indicate an intent to render a full, final, and complete judgment at that point in time." *Gamboa v. Gamboa*, 383 S.W.3d 263, 270 (Tex. App.—San Antonio 2012, no pet.). A court does not render judgment if "it announces . . . an 'intention to render judgment in the future.'" *State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) (quoting *Leal*, 892 S.W.2d at 858). In addition, an oral pronouncement does not constitute a rendition of judgment "if essential issues remain pending when the pronouncement is made." *McShane v. McShane*, 556 S.W.3d 436, 442 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

The record here demonstrates that the court did not orally render judgment on July 7, 2017. First, the court prefaced its initial remarks by stating, "the following *are going to be* the Court's

6

orders[.]" (Emphasis added). This evidences the court's intent to render judgment in the future. *See Naylor*, 466 S.W.3d at 788; *Araujo v. Araujo*, 493 S.W.3d 232, 236 (Tex. App.—San Antonio 2016, no pet.) ("I am going to grant the divorce in this case" is not a rendition). Second, the court stated only that it was "going to name the parties joint managing conservators," and that it was "going to name the father the conservator with the exclusive right to determine the primary residence of the child; however, that's going to be within El Paso County, Texas." The court did not address the issues of visitation or child support. Thus, the court's pronouncement is not a rendition of judgment because essential issues remained pending when that pronouncement was made. *See McShane*, 556 S.W.3d at 442.

Finally, immediately after expressing its intention concerning who would be the primary conservator, the court essentially retracted its proposed ruling. Once Father informed the court that he could not relocate to El Paso, the court stated, "Then I'll reconsider my ruling, and I'll send something to the parties, as soon as I can figure this out." Clearly, no judgment was rendered on July 7, 2017.

The issues presented to the court at the July 7, 2017 hearing remained unresolved until the court issued a letter ruling dated March 2, 2018. In that letter, the court stated:

> The Court, after examining the record and the evidence and argument of counsel, finds that the following Orders are in the best interest of the Child:
>
> - The Parties *are appointed* Joint Managing Conservators with Petitioner (Mother) having the right to designate the primary residency of the child;
>
> - Respondent (Father) *is granted* the Standard Possession Order with the 100-mile provision; and
>
> - Respondent *is ordered* to pay child support at the guideline amount, as of the date of the conservatorship.

(Emphasis added). This letter addresses each of the three essential issues raised in both parties' petitions—designation of the child's primary residence, visitation according to the standard

7

possession order, and child support—and demonstrates a present intent to render a full, final, and complete judgment on those issues. It therefore constitutes a rendition of judgment. *See McShane*, 556 S.W.3d at 442; *Gamboa*, 383 S.W.3d at 270.

As a final matter, the March 2, 2018 rendition of judgment states that "entry of the Court's judgment, by submission, is set for: April 11, 2018 at 1:30 p.m." By setting entry of judgment by submission, the court conveyed that the matters on which it had rendered judgment were finally determined and that no further evidentiary hearing would be held. On May 7, 2018,[1] the court signed the Final Order naming Mother as the conservator with the exclusive right to designate the primary residence of the child without geographic restriction, in accordance with its March 2, 2018 rendition of judgment.

In summary, the court's May 7, 2018 written order naming Mother primary conservator was simply the formalization of its judgment rendered on March 2, 2018, which rendition was based on the evidentiary hearing held on July 7, 2017. Father was given notice of, and fully participated in, that hearing. He was not entitled to a further evidentiary hearing on the matters litigated at that time, including which parent should have the exclusive right to designate the child's primary residence. In addition, the court's Final Order fully comports with its rendition of judgment on that subject.

Also in conjunction with his first issue on appeal, Father argues that the trial court violated Section 156.102 of the Texas Family Code by modifying its July 7, 2017 bench ruling designating the primary conservator within one year of that ruling. Section 156.102 provides that a person filing suit to modify the designation of the person having the exclusive right to designate the

---

[1] Father points out that the trial court signed the Final Order prior to the noticed date for entry of that order. He does not, however, specifically assert the timing of the signing as reversible error and does not present any argument or authorities demonstrating that it is such error. *See Rangel v. Progressive Cty. Mut. Ins. Co*., 333 S.W.3d 265, 270 (Tex. App.—El Paso 2010, pet. denied) (issue must be supported by argument and authorities).

primary residence of a child within one year after the date of the rendition of the order must execute and attach an affidavit containing certain specified allegations and supporting facts. TEX. FAM. CODE ANN. § 156.102.

Father contends that Mother's January 19, 2018 petition to modify was filed within one year after the court rendered its July 7, 2017 order designating him as the person having the exclusive right to designate the child's primary residence, and that the petition was not supported by the required affidavit. But, as just discussed, the trial court did not render judgment on July 7, 2017. For this reason, Section 156.102 does not apply. Issue One is overruled.

*Entering temporary orders without notice and hearing*

In his second issue on appeal, Father contends that the trial court abused its discretion by entering temporary orders denying him access to and possession of the child without giving him notice and an opportunity to be heard. The order that forms the basis of this contention is a temporary restraining order signed on January 29, 2018, which, in pertinent part, prohibits Father from removing the child from Mother or from El Paso County. Father argues that this order violates Section 156.006 of the Texas Family Code, which provides:

> While a suit for modification is pending, the court may not render a temporary order that has the effect of creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child, or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence, under the final order unless the temporary order is in the best interest of the child and [certain other conditions are met].

TEX. FAM. CODE ANN. § 156.006.

Father's argument is again premised on his belief that the court rendered judgment on July 7, 2017 granting him the exclusive right to designate the child's primary residence. For the reasons discussed above, no rendition of judgment occurred on that date. In fact, as of January 29, 2018,

9

neither parent had been granted the exclusive right to designate the child's primary residence. Section 156.006 does not apply.

Father also contends that the January 29, 2018 order violates Section 105.001 of the Texas Family Code, which governs entry of temporary orders. *See* TEX. FAM. CODE ANN. § 105.001. But that section expressly permits the entry of a temporary restraining order, without notice and hearing, prohibiting a party from removing a child beyond a geographical area identified by the court. TEX. FAM. CODE ANN. § 105.001(a)(4), (b). The statute also provides that a temporary restraining order under that section "shall be granted without the necessity of an affidavit or verified pleading stating specific facts showing that immediate and irreparable injury, loss, or damage will result before notice can be served and a hearing can be held." TEX. FAM. CODE ANN. § 105.001(b). Father has not established a violation of section 105.001.

Finally, Father filed a motion to quash the temporary restraining order, which the trial court granted. Even if the temporary restraining order constituted an abuse of discretion at the time it was entered, Father has not identified any harm that can be remedied by this Court.

"A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Ordinarily, the expiration of an order granting injunctive or protective relief renders the issue moot." *In re Sierra Club*, 420 S.W.3d 153, 156 (Tex. App.—El Paso 2012, orig. proceeding). In the context of the temporary restraining order, the trial court granted Father the relief he requested by quashing the order. As in the case of an expired temporary restraining order, the issue is moot. *See id.* Issue Two is overruled.

*Modification of child support*

The trial court ordered Father to pay child support in the amount of $1,020 per month. In his third issue on appeal, Father contends that this modification of his child support obligation is

10

based on Mother's January 19, 2018 petition to modify, which was never set for hearing. He thus concludes that the child support order is not supported by any evidence. We note, however, that Mother also requested modification of Father's child support obligation in her earlier petition to modify, which was the subject of the July 7, 2017 evidentiary hearing. The question, then, is whether the evidence presented in that hearing supports the trial court's order.[2]

"The Texas Family Code provides guidelines to trial courts in calculating monthly child support obligations and these guidelines are presumed reasonable." *Stringfellow v. Stringfellow*, 538 S.W.3d 116, 118 (Tex. App.—El Paso 2017, no pet.) (citing TEX. FAM. CODE ANN. § 154.122(a)). Courts are directed to "calculate net resources for the purpose of determining child support liability[.]" TEX. FAM. CODE ANN. § 154.062(a). "There must be some evidence of a substantive and probative character of net resources in order for the court to discharge its duty under section 154.062." *Marquez v. Moncada*, 388 S.W.3d 736, 739 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The starting point for calculating net resources is to determine the party's income. *See* TEX. FAM. CODE ANN. §§ 154.061, 154.062(b); *Stringfellow*, 538 S.W.3d at 118. Father testified that he was not currently employed but was trying to get into a doctoral program in applied mathematics at a Washington university. He was also trying to start his own business. Father had previously served for twelve years in the United States Army, and, at the time of the hearing, was a member of the Army Reserve, where he worked one weekend per month. The record does not reflect how much Father earned for his monthly reserve duty. Finally, Father testified that he had savings and investments of "maybe 100,000" in a 401(k), a college savings fund, and a Thrift

---

[2] We recognize that the court held an evidentiary hearing on March 2, 2018, but that hearing concerned only Father's motion to quash the January 29, 2018 temporary restraining order and motion to dismiss Mother's January 19, 2018 petition to modify. It was not a hearing on the merits of any petition to modify and, for that reason, no evidence adduced at that hearing may be considered to support the trial court's Final Order on the merits.

Savings Plan, but there is no evidence of whether those savings and investments generate any income.

The only evidence in the record of Father's income is that he earned an undisclosed amount for serving one weekend per month in the Army Reserve.[3]  The only evidence of any additional assets is that he had approximately $100,000 in savings and investments, divided in unknown proportions among three funds.  The Family Code provides that, "[w]hen appropriate, in order to determine the net resources available for child support, the court may assign a reasonable amount of deemed income attributable to assets that do not currently produce income.  The court shall also consider whether certain property that is not producing income can be liquidated without an unreasonable financial sacrifice[.]"  TEX. FAM. CODE ANN. § 154.067.  But there is no basis in the record upon which the trial court could deem income attributable to Father's assets because there is no evidence of how much is in each fund and whether or under what circumstances any of those funds can be liquidated.

We conclude that the record of the July 7, 2017 hearing lacks any evidence of a substantive and probative character of Father's net resources.  *See Marquez*, 388 S.W.3d at 739.  "In the absence of evidence of a party's resources, as defined by Section 154.062(b), the court shall presume that the party has income equal to the federal minimum wage for a 40-hour week to which the support guidelines may be applied."  TEX. FAM. CODE ANN. § 154.068.

The federal minimum wage for nonexempt employees is $7.25 an hour.  29 U.S.C. § 206(a)(1)(C).  A 40-hour week yields a weekly income of $290, which is a yearly income of

---

[3] The record contains an October 2016 child custody evaluation that notes Father received $6,070 base pay per month from the United States Army.  But that same report also notes that Father was leaving the Army in December 2016, and it is undisputed that, at the time of the hearing, he was no longer on active duty.

$15,080, or a monthly income of $1,257.[4] The child support guidelines dictate that, for one child, a court render child support in the amount of 20 percent of the obligor's monthly net resources. TEX. FAM. CODE ANN. § 154.125(b). Applying this percentage to the federal minimum wage for a 40-hour week results in a monthly child support payment of $251.40.[5] The support actually ordered by the court in this case amounts to over 81 percent of the Father's statutorily presumed monthly net resources. It is readily apparent, then, that the trial court did not apply the child support guidelines to the federal minimum wage for a 40-hour week.

No evidence introduced at the July 7, 2017 hearing supports the trial court's imposition of a $1,020 monthly child support obligation. And that obligation does not comport with the child support guidelines as applied to the statutory wage and salary presumption. We hold that the trial court abused its discretion because it did not have sufficient information concerning Father's net resources to exercise its discretion and, insofar as it was entitled to exercise its discretion based on the statutory wage and salary presumption, it erred in its application of that discretion. *See In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 562.

In addition to ordering monthly child support, the trial court ordered Father to pay arrearages for the period August 1, 2017 to April 1, 2018 in the amount of $9,180. That amount is based on the $1,020 monthly support obligation that we have found to be an abuse of discretion.[6] The arrearages order thus also constitutes an abuse of discretion.

---

[4] $290 weekly income times 52 weeks per year equals $15,080 yearly income. $15,080 yearly income divided by 12 months equals $1,257 monthly income.

[5] For simplicity, we use the gross earnings under the federal minimum wage for a 40-hour week. An actual determination of net resources would require certain deductions from that amount, which would ultimately reduce the amount of child support authorized by statute and increase the discrepancy between the authorized amount and the amount awarded by the trial court in this case. *See* TEX. FAM. CODE ANN. § 154.062 (listing items to be deducted to determine net resources).

[6] $1,020.00 monthly support times 9 months (August 1, 2017 through April 1, 2018) equals $9,180.00.

Issue Three is sustained. The Final Order is reversed insofar as it orders payment of $1,020 monthly child support and $9,180 child support arrearages. The issue of child support is remanded to the trial court.

*Order to pay cash medical support*

Father contends in his fourth issue on appeal that the trial court abused its discretion by ordering that he pay cash medical support, to be withheld from his earnings, even though he maintains health insurance on the child.

If health insurance for a child is not otherwise available at a reasonable cost to the parent, Section 154.182 of the Texas Family Code authorizes a court to order payment of cash medical support for the child, in an amount not to exceed 9 percent of the obligor's annual resources. TEX. FAM. CODE ANN. § 154.182(b). The order here at issue orders Father to pay cash medical support in the amount of either $160 or $113 per month.[7]

It is undisputed in the record before us that Father is providing health insurance for the child through Tricare, which is available to him because of his status as an Army Reservist. The trial court therefore was not authorized by Section 154.182 to order Father to pay additional cash medical support. *See id.* That order constitutes an abuse of discretion.

In addition, even if the trial court were authorized to order payment of cash medical support, for the reasons discussed above in the context of child support, the court did not have sufficient information concerning Father's net resources to exercise its discretion and to determine an amount of cash medical support that would not exceed 9 percent of Father's annual resources. *See id.* For this additional reason, we hold that the court abused its discretion by ordering payment of cash medical support.

---

[7] The order states, "[Father] is ORDERED to pay the State of Texas cash medical support, as additional child support, of one hundred sixty dollars ($113.00) per month[.]"

Issue Four is sustained. The Final Order is reversed insofar as it orders Father to pay cash medical support, and that issue is remanded to the trial court.

*Best interest of the child concerning designation of primary residence*

In his fifth issue on appeal, Father asserts that the trial court abused its discretion by concluding that it is in the best interest of the child to designate Mother as primary conservator. Father supports his argument with numerous fact statements that are not accompanied by any citation to the record, and our examination of the record does not reveal any evidence supporting many of those statements. Our review is confined to the evidence presented in the trial court.[8] *See* TEX. R. APP. P. 34.1 (appellate record consists of clerk's record and reporter's record). All fact statements not supported by such evidence will be disregarded.

Courts reviewing issues concerning the best interest of the child are often guided by the non-exhaustive list of factors set out in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976). *In re T.M.P.*, 417 S.W.3d at 565. Those factors include:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

*Id.* (citing *Holley*, 544 S.W.2d at 371–72).

On appeal, Father raises concerns relating to L.A.-K.'s safety (*Holley* factor three) and Mother's parental abilities and behavior (*Holley* factors four and eight). His primary concern appears to be Mother's criminal history. But, except for traffic violations, that criminal history

---

[8] We also disregard certain documents that Father has appended to his brief but that were not introduced in the trial court. *See Elk River, Inc. v. Garrison Tool & Die, Ltd.*, 222 S.W.3d 772, 788 (Tex. App.—Dallas 2007, pet. denied) (attachments to brief are not evidence to be considered by appellate court).

ended in 2006, well before L.A.-K.'s birth in 2011. Father also expresses concern that Mother's boyfriend has a criminal history, but Mother testified that she was no longer dating that boyfriend.

Father next contends that Mother's employment renders her unfit to be the child's primary conservator. In briefing, he contends that Mother works nights in a gentlemen's club and that L.A.-K. is cared for by her maternal grandmother until eleven at night while Mother is at work. But Mother testified that her employment with the gentlemen's club ended two years prior to the hearing. At the time of the hearing, she was working with a home care company. Her hours were flexible and allowed her to drop L.A.-K. at school and be out of work by the time the school day ended. Mother acknowledged that L.A.-K.'s grandmother had sometimes watched the child in the evenings because Mother was working two jobs, but she testified that that is no longer the case.

The record contains evidence that Mother's behavior and circumstances at times in the past may have demonstrated that naming her primary conservator would not be in L.A.-K.'s best interest. But those behaviors and circumstances no longer applied at the time of the July 7, 2017 hearing. Father urges that "[p]ast is often prologue." *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) (considering parent's past lifestyle in custody suit). But past is not always prologue and, while the trial court was entitled to consider the evidence of Mother's past behavior and circumstances, it was not required to assume that those behaviors and circumstances would recur.

"The trial court was in the best position to observe the demeanor and personalities of the witnesses and could feel the forces, powers, and influences that cannot be discerned by merely reading the record. Thus, trial courts do not abuse their discretion so long as some evidence of a substantive and probative character exists to support the trial court's decision." *In re T.M.P.*, 417 S.W.3d at 566. There is evidence of a substantive and probative character that Mother's current

16

and foreseeable behavior and circumstances were appropriate for the child. We cannot conclude that the court abused its discretion by deciding, even in light of Mother's past behavior and circumstances, that it is in L.A.-K.'s best interest to grant Mother the exclusive right to designate the child's primary residence. *See id.*

In addition to the fact that the record does not bear out Father's concerns about Mother's present parental abilities, there is evidence that affirmatively demonstrates that it is in the child's best interest to have her primary residence in El Paso and, thus, with Mother. For example, L.A.-K. has a half-brother in El Paso with whom she has a close relationship, and several cousins with whom she spends a great deal of time. Mother has extended family in El Paso, including her mother, brother, and two sisters, who give her support and assistance with the child. Because of this family support and Mother's flexible work schedule, L.A.-K. does not spend any time in daycare when she is in El Paso. In contrast, the only extended family the child has in Washington is her paternal grandmother, who lives 25 to 30 minutes from Father and speaks only a little bit of English. Her primary language is French, which the child does not speak.

The trial court's decision to name Mother as the person with the exclusive right to designate the child's primary residence is supported by evidence of a substantive and probative character. *See id.* That decision is, therefore, not an abuse of discretion. *See id.* Issue Five is overruled.

### Designation of Primary Residency without Geographic Restriction

Father asserts in his sixth issue on appeal that the trial court discriminated against him because he is a foreign-born, dark-skinned African-American, who is not a native or resident of El Paso and does not speak Spanish. By his argument, Father contends that the court discriminated against him because it imposed a geographic restriction when it designated him primary

conservator, but it did not impose any such geographic restriction when it later named Mother primary conservator instead.

We acknowledge that the trial court's initial inclination was to designate Father as the person with the exclusive right to designate the child's primary residence, with that residence restricted to El Paso County, Texas. The fact that the court immediately reconsidered that option because Father could not relocate to El Paso, combined with the fact that it later gave the exclusive right to Mother, who lives in El Paso, demonstrates that keeping L.A.-K.'s primary residence in El Paso was a significant factor in the court's assessment of the child's best interest. And, as discussed above, there is evidence that keeping L.A.-K.'s primary residence in El Paso is in her best interest. Given that the record reflects that both parents have a good relationship with the child and both have demonstrated an ability to care for her, we cannot conclude that the court abused its discretion by giving weight to where the child would primarily live. We note that this consideration has nothing to do with any inherent benefit of living in El Paso. Rather, it simply recognizes the benefit of the child living near close family members.

Father argues that the trial court must nevertheless have discriminated against him because it did not impose a geographic restriction on Mother's right to designate the child's primary residence. But there is no indication in the record that Mother has any intention to leave El Paso. The trial court may well have concluded that, because Mother has no plan to relocate, there is no need to impose a geographic restriction. On the other hand, nothing in the record supports Father's assertion that the trial court decided not to impose a geographic restriction because it was influenced by, or gave any consideration to, his race, ethnicity, country of origin, or fluency with Spanish. Issue Six is overruled.

*Failure to set post-judgment motions for hearing*

18

In his seventh issue on appeal, Father asserts that the trial court abused its discretion by refusing to hold a hearing on his timely-filed post-judgment motion. On June 5, 2018, within thirty days after the court signed the Final Order, Father filed a "Verified Motion To Modify Judgment/Order In Suit To Modify Parent Child Relationship On Grounds Of Clear Error Of Facts."[9] *See* TEX. R. CIV. P. 329b(a), (g) (motion to modify must be filed within 30 days after order complained of was signed). The trial court declined to hear the motion on the merits because of a concern that it lacked jurisdiction because Father had already filed a notice of appeal. *But see* TEX. R. CIV. P. 329b(d) ("The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed.").

"On appeal, the appellant has the burden to demonstrate harm." *Hooper v. Sanford*, 968 S.W.2d 392, 394 (Tex. App.—Tyler 1997, no pet.) (citing *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 820 (Tex. 1980)). We need not determine whether the trial court erred by failing to hear Father's motion because Father has not sustained his burden of demonstrating harm.

The first requests contained in Father's June 5, 2018 motion concern summer possession of the child, designating a neutral place to exchange the child, and details concerning telephone access to the child. Father does not address these concerns in his brief on appeal and presents no argument demonstrating that he was harmed by the failure to hold a hearing on them. *See* TEX. R. APP. P. 44.1; *Hooper*, 968 S.W.2d at 394.

Father also sought to modify his child support and medical child support obligations. For reasons discussed above, we reverse those portions of the Final Order imposing those obligations and remand those issues to the trial court. Father has not demonstrated any harm from the trial

---

[9] Father filed additional post-judgment motions but those motions were not timely filed within 30 days after the final order was signed. *See* TEX. R. CIV. P. 329b(a), (g).

19

court's failure to hold a hearing that is not rectified by this remand. *See* TEX. R. APP. P. 44.1; *Hooper*, 968 S.W.2d at 394.

Finally, Father sought to modify the Final Order to have himself named the person with the exclusive right to designate the child's primary residence. Because this requested modification comes within one year of the earlier rendition naming Mother as the person with that exclusive right, it is governed by Section 156.102 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 156.102(a). That statute requires that the movant file an affidavit, with supporting facts, alleging one of the following:

> (1) that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development;
>
> (2) that the person who has the exclusive right to designate the primary residence of the child is the person seeking or consenting to the modification and the modification is in the best interest of the child; or
>
> (3) that the person who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child for at least six months and the modification is in the best interest of the child.

TEX. FAM. CODE ANN. § 156.102(b). If the affidavit does not state facts adequate to support one of these allegations, the court "shall deny the relief sought and refuse to schedule a hearing[.]" TEX. FAM. CODE ANN. § 156.102(c).

Father did not file a Section 156.102 affidavit. And, although his motion is verified, it does not contain any of the allegations quoted above or facts supporting any of those allegations. On the contrary, the motion seeks modification of the primary conservator based only on Father's opinion that he can give L.A.-K. better educational opportunities and that he is willing to pay for Mother's transportation to visit the child. Because Father did not assert sworn facts adequate to support any of the statutory allegations, he was not entitled to a hearing on the request to modify appointment of the primary conservator. *See* TEX. FAM. CODE ANN. § 156.102(c) (court shall

20

refuse to set request to modify for hearing); *see also Moreno v. Perez*, 363 S.W.3d 725, 741 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (no error in refusing to hold hearing on request to modify primary conservator). Thus, even if the court erred in refusing to hear the motion based on jurisdictional concerns, that error was harmless.

Father has not sustained his burden of demonstrating that he was harmed by the trial court's failure to hold a hearing on his June 5, 2018 motion to modify. Issue Seven is overruled.

## CONCLUSION

The provisions of the Final Order ordering Father to pay child support, child support arrearages, and medical child support are reversed. Those issues are remanded to the trial court for further proceedings. The Final Order is otherwise affirmed.


GINA M. PALAFOX, Justice

January 29, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.