

# NUMBER 13-20-00415-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE MATTER OF THE MARRIAGE OF TERESA L. CAMPERO AND ADALBERTO CAMPERO AND IN THE INTEREST OF A.C., A.C.J., AND A.Z.C., CHILDREN

---

On appeal from County Court at Law No. 5
of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Benavides

Appellant Teresa L. Campero appeals from a final decree of divorce dissolving her marriage to appellee, Adalberto Campero. In two issues, which we discuss together, Teresa argues that: (1) the trial court erred by rendering judgment on the parties' mediated settlement agreement (MSA), and (2) the trial court erred by rendering judgment on a settlement agreement after Teresa revoked her consent. We affirm.

## I.  BACKGROUND

### A.  Procedural History

Teresa and Adalberto were married on or about August 7, 2004. During their marriage, the Camperos had three children: A.C., A.I.C., and A.Z.C. On March 6, 2019, Teresa filed for divorce, and on May 6, 2019, Adalberto filed a counterpetition for divorce. On May 8, 2020, the parties attended mediation with counsel and reached an agreement. Both Teresa and Adalberto signed the resulting agreement, but only Adalberto's attorney's signature appears on the MSA. The MSA was filed with the trial court on June 3, 2020, along with Adalberto's amended motion to enter judgment.[1]

Before the trial court rendered judgment on the MSA, Teresa withdrew her consent by written objection. On July 14, 2020, Teresa filed: (1) a revocation of consent to the settlement agreement and (2) an objection to the entry of a final decree of divorce and a request for the court to decline to enter judgment. In both pleadings, Teresa argued that the purported MSA failed to meet the statutory requirements for such agreements. Specifically, Teresa contended that because she was represented during mediation, the MSA needed to include her counsel's signature to be valid. According to Teresa, because it failed to do so, the MSA was revocable.

On July 15, 2020, the trial court heard Adalberto's amended motion to enter judgment. Counsel for Teresa testified that he was present for the entirety of the mediation, but he did not specifically testify that he was present when Teresa signed the MSA. At the conclusion of the hearing, the trial court held that the MSA was valid and

---

[1] No original motion to enter judgment appears in the record.

stated, "I am going to sign a decree based on the provisions of the [MSA]."

On July 24, 2020, the trial court signed an order overruling Teresa's objections to the MSA. The order states:

> IT IS THEREFORE ORDERED that the *Mediated Settlement Agreement* is binding on this Court and the parties and judgment is therefore rendered on the same. The parties are FURTHER ORDERED to submit a Final Decree of Divorce that comports with the terms and conditions of the valid *Mediated Settlement Agreement* on or before July 31, 2020.

Teresa's counsel signed the order with the caveat that she was approving the order "only as to form," and that "[b]y signing this Order, [Teresa] is not waiving any right to challenge the substance or validity of this Order."

On September 1, 2020, counsel for Adalberto appeared at a subsequent entry hearing and informed the trial court that all parties had signed the final decree of divorce. Teresa and her attorney did not appear at this hearing nor did they object to the entry of the final decree of divorce. The record reflects that both parties "approved and consented to" the final decree of divorce, whose terms differ from the MSA, "as to both the form and substance." The trial court signed the final decree of divorce on September 3, 2020. This appeal followed.

## B.    Differences between MSA and Final Decree of Divorce

There were a number of different provisions included in the final decree of divorce that were not reflected in the MSA.[2]

For example, the decree included the following language:

On July 14, 2020, TERESA L. CAMPERO filed a *Revocation of Consent*

---

[2] For the sake of brevity, we will address only a few of those differences. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.")

and *Objection to Entry of Final Decree of Divorce and Request for Court to Decline to Enter Judgment* on the basis that the parties' Mediated Settlement Agreement was not a valid, binding, and irrevocable agreement in accordance with Sections 6.602, 153.0071[,] and 154.071 of the Texas Family Code. On July 15, 2020, the Court denied the request as evidenced by the *Order on Respondent's Motion for Entry of Final Decree of Divorce and Petitioner's Request for the Court to Decline to Enter Judgment* signed by the Court on July 24, 2020. In doing so, the Court made a specific finding that the Mediated Settlement Agreement signed by the parties on May 8, 2020 constitutes a valid, binding and irrevocable agreement, satisfying all requirements of Sections 6.602, 153.0071[,] and 154.071 of the Texas Family Code and that ADALBERTO CAMPERO is entitled to judgment.

Without waiving any objection to the Mediated Settlement Agreement, TERESA L. CAMPERO hereby confirms that this Final Decree of Divorce is consistent with the intent and the terms of that Mediated Settlement Agreement and waives all objection to the Final Decree of Divorce and right to appeal based upon the form or the substance of the Final Decree of Divorce as evidenced by her signature attached hereto. Except as specifically provided herein, in entering into the Final Decree of Divorce, neither party waives any other right of appeal available under Texas law.

However, in the MSA, Teresa did not agree to waive any right to appeal from the form and substance of the final decree of divorce.

The parties agreed in the MSA that A.C. would attend either "IB in McAllen or Juan Diego in Mission," A.I.C. would attend "Med High in Mercedes," and A.Z.C. would attend "OLS." The MSA also dictated that Adalberto would be responsible for paying "100% of the tuition" of A.Z.C. and of A.C. if she attended Juan Diego. However, in the final decree of divorce, this part of the agreement materially changed. The decree stated that both A.I.C. and A.C. would attend Juan Diego and that A.Z.C. would attend OLS. Adalberto was ordered in the decree to pay "all tuition, books, school-related equipment and supplies, uniforms, testing, application and registration fees, and lab fees related to each school" for all three children.

4

The decree awarded several businesses to Adalberto as part of the division of community property, but these businesses were to be confirmed as his separate property per the MSA. The parties agreed in the MSA that no adult could be with the parties overnight while they were in possession of the children, unless that adult was within "[one] degree of consanguinity." However, the final decree of divorce modified this to enjoin the parties from permitting any "unrelated adult with whom" they have "an intimate or dating relationship with to remain in the same residence with the children" overnight.

There were several additional financial details that changed from the MSA to the final decree of divorce. The parties agreed in the MSA that child support payments would begin on June 1, 2020, and that if Adalberto attempted to modify the child support amount, child support would then convert to a money judgment secured by collateral in the amount of $432,000 minus any amounts paid. In the decree, however, child support was to be paid entirely by a money judgment secured by collateral in the amount of $424,000, regardless of any attempt by Adalberto to modify child support, with the first payment to be due on September 1, 2020. In the MSA, the parties agreed child support would not cease until their youngest child emancipated. However, in the final decree, Adalberto was required to pay in monthly installments of $4,000 "for a period of 106 months, or until the total amount due has been paid in full." In the final decree of divorce, Adalberto was ordered to pay Teresa's attorney's fees "in an amount not to exceed $13,000." However, no such cap was contemplated in the MSA.

## II.  FINAL DECREE OF DIVORCE

In two issues that we analyze together, Teresa contends that the trial court erred

5

in finding the MSA satisfied the statutory requirements and by enforcing the MSA by signing the final decree of divorce after Teresa revoked her consent to the MSA.

## A.  Applicable Law & Standard of Review

A mediated settlement agreement is valid if the agreement:

(1)  provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2)  is signed by each party to the agreement; and

(3)  is signed by the party's attorney, if any, who is present at the time the agreement is signed.

TEX. FAM. CODE ANN. § 6.602(b). An MSA that meets these statutory requirements "is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 617 (Tex. 2012). A party's attempt to revoke its consent to a statutorily compliant MSA has no effect on the trial court's obligation to render judgment on the MSA. *Id.* at 618 n.2; *In re C.C.E.*, 530 S.W.3d 314, 321 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A final judgment rendered on an MSA must be in strict or literal compliance with that agreement. *In re M.E.H.*, 631 S.W.3d 244, 256 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Kramer v. Kastleman*, No. 03-13-00133-CV, 2017 WL 5119211, at *7 (Tex. App.—Austin Nov. 3, 2017, pet. denied) (mem. op.)); *In re A.E.*, 580 S.W.3d 211, 215 (Tex. App.—Tyler 2019, pet. denied). The trial court is not permitted to modify an MSA as it sees fit and has no discretion to enter a judgment that varies from its terms. *In re Marriage of Joyner*, 196 S.W.3d 883, 891–92 (Tex. App.—Texarkana 2006, pet. denied). However, trial courts may include terms necessary to effectuate and implement the parties' agreement, so long

6

as they do not substantively alter it. *In re Lee*, 411 S.W.3d 445, 458 n.17 (Tex. 2013). A trial court's rendition of judgment on an MSA is reviewed under an abuse of discretion standard. *Id.* at 450.

Judgments typically go through three stages: (1) rendition, (2) signing, and (3) entry. *Bazan v. Canales*, 200 S.W.3d 844, 847 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.); *Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex. App.—Fort Worth 2004, no pet.). Whether a trial court's actions constitute a rendition of judgment is a question of fact. *Joyner*, 196 S.W.3d at 887. "[A] trial court renders judgment when it officially announces its decision in open court or by written memorandum filed with the clerk." *Woods v. Woods*, 167 S.W.3d 932, 933 (Tex. App—Amarillo 2005, no pet.).

An intent to render future judgment does not constitute a rendition of judgment. *Id.* If essential issues are left to be decided, a trial court's pronouncement is also not considered a rendition of judgment. *McShane v. McShane*, 556 S.W.3d 436, 442 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). Rather, the words spoken or written by the trial court must evince a present, as opposed to future, act that effectively decides the issues before the court. *Id.* In other words, the trial court's rendition "must indicate the intent to render a full, final, and complete judgment at that point in time." *Joyner*, 196 S.W.3d at 886.

A trial court has plenary power to "vacate, modify, correct, or reform [a] judgment within thirty days after the judgment is signed." TEX. R. CIV. P. 329b(d). Thus, even where a trial court has rendered judgment resolving the matters at issue, it is free to modify that rendition until a final judgment is signed. *Cook v. Cook*, 888 S.W.2d 130, 132 (Tex. App.—

Corpus Christi–Edinburg 1994, no writ); *see Stallworth v. Stallworth*, 201 S.W.3d 338, 349 (Tex. App.—Dallas 2006, no pet.). For MSAs, any ambiguity within must be resolved before an agreed judgment can be rendered. *Milner*, 361 S.W.3d at 623. In cases where the parties' MSA specifies that the parties are to return to mediation to determine the meaning of ambiguities within the agreement, the trial court has no authority to supplant its interpretation of the agreement's terms in place of the mediator's. *See id.* at 622.

## B. Analysis

It is undisputed that the trial court explicitly rendered judgment on the MSA in its order on July 24, 2020. However, neither party argues that this was a final judgment for purposes of appeal. The trial court did not purport to grant the parties' divorce in this order, nor did it indicate within that it was a final, appealable order. *See Parks v. DeWitt Cnty. Elec. Coop., Inc.*, 112 S.W.3d 157, 161 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). Thus, the trial court was free to modify or vacate its judgment as it sought fit. *See Cook*, 888 S.W.2d at 132; *Stallworth*, 201 S.W.3d at 349; *Mercantile Bank of Hous. v. Rozema*, 508 S.W.2d 187, 189 (Tex. App.—Houston [1st Dist.] 1974, no writ) (holding that the trial court maintained jurisdiction to set aside a judgment where the judgment was not final).

Judgment on an MSA must strictly comply with the MSA's terms. *See In re A.E.*, 580 S.W.3d at 215. As discussed above, there were significant and substantive differences between the MSA and the final decree of divorce signed on September 3, 2020. Teresa argues in her reply brief that "any additional terms included in the *Final Decree of Divorce* were not material changes, but instead were merely clarifications to

8

the [MSA] for enforceability purposes." It is unclear what Teresa alleges is ambiguous or unenforceable about the agreed term, "[h]usband to pay wife's attorney[']s fees" in the MSA. Yet, the decree orders Adalberto to pay only $13,000 of Teresa's attorney's fees, rather than their entirety. Additionally, in the decree, Adalberto agreed to pay the tuition and fees for all three children, instead of, at most, tuition for two children, as was contemplated in the MSA. These substantively modified terms indicate the parties renegotiated.

Even if we were to conclude that the original provisions in the MSA were ambiguous and required clarification, the trial court did not have discretion to render judgment on the MSA unless any ambiguities had been resolved. *See Millner*, 361 S.W.3d at 623. Per the terms of the MSA, the trial court also would not have been the proper arbiter of ambiguous terms. *See id.* at 621. The MSA provided that to resolve disputes pertaining to the interpretation of its terms, the parties would attempt to return to mediation with the mediator who facilitated the MSA. The record does not reflect that the parties attempted to remediate any disputed terms of the MSA prior to the entry of the divorce decree.

There is no indication, in either the final decree of divorce or in the transcript from the September 1 hearing, that by virtue of signing the final decree of divorce, the trial court was rendering judgment on the MSA or incorporating the MSA into the divorce decree. The trial court's prior representations at the July 15 hearing and in the July 24 order are not dispositive on this issue. *See S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) (per curiam) ("The fact that the trial court believed that [it] had rendered

9

judgment [previously] . . . is not dispositive.").

The only mention of the MSA within the final decree of divorce is in the section concerning Teresa's right of appeal. In that section, it is Teresa, not the trial court, who confirms the final decree of divorce is consistent with the MSA. Teresa's acknowledgment that the final decree of divorce is consistent with the MSA is also not determinative on the issue. The decree states that the trial court previously determined Adalberto is entitled to judgment on the MSA, but it does not state that the decree constitutes judgment on the MSA. Judgment on an MSA is not a mere formality, nor is it automatic. *Highsmith v. Highsmith*, 587 S.W.3d 771, 778 (Tex. 2019) (per curiam). Therefore, simply being entitled to judgment on an MSA does not mean a party has indeed received judgment on that MSA.

At the September 1 hearing, counsel for Adalberto informed the trial court that a final decree of divorce had been drafted and signed by both the parties and their attorneys. The trial court responded, "You said the magic words: You have got an agreement with signatures." The trial court also informed counsel for Adalberto that "[i]f you submit that decree with signatures, the Court will sign off on it." The court did not query into the decree's compliance with the MSA. The final decree of divorce related that the court heard the case on September 1, rather than July 15—the date the trial court heard argument on the validity of the MSA. We therefore conclude that the final decree of divorce did not constitute judgment on the MSA. *See In re Marriage of Russell*, 556 S.W.3d 451, 458–59 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Instead, the trial court implicitly vacated its judgment on the MSA from July 24,

10

2020, and entered its reformed judgment on September 3, 2020, based on the parties' new agreement. *See Owens-Corning Fiberglass Corp. v. Wasiak*, 883 S.W.2d 402, 411 (Tex. App.—Austin 1994, no writ) ("[A]ny change in a judgment made by the trial court during its period of plenary power should be treated as a modified, corrected, or reformed judgment that presumptively vacates the trial court's former judgment unless the record indicates a contrary intent."); *SLT Dealer Grp., Ltd. v. AmeriCredit Fin. Servs., Inc.*, 336 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Although a trial court has no discretion to set aside a statutory compliant MSA, neither party objected to this issue at trial nor complains on appeal of this error. *See* TEX. R. APP. P. 33.1, 38.1(f); *Martinez Jardon v. Pfsiter*, 593 S.W.3d 810, 822 (Tex. App.—El Paso 2019, no pet.); *see also Brooks v. Brooks*, 257 S.W.3d 418, 424 (Tex. App.—Fort Worth 2008, pet. denied) (holding a party was estopped from seeking to enforce terms of MSA on appeal after requesting judgment on terms inconsistent with MSA). From the record, it appears the trial court believed at the September 1 hearing that an agreement had been reached by the parties as to the terms of the final decree of divorce and that therefore, the parties consented to the entry of the judgment.

"A party's consent to the trial court's entry of judgment waives any error, except for jurisdictional error, contained in the judgment, and that party has nothing to properly present for appellate review." *Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ); *see Gonzalez v. Wells Fargo Bank, N.A.*, 441 S.W.3d 709, 714 (Tex. App.—El Paso 2014, no pet.); *Harrison v. Reiner*, 607 S.W.3d 450, 458 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *see also Gross v. Dannatt*, No. 13-15-00309-CV, 2017 WL

11

2705471, at *1 (Tex. App.—Corpus Christi–Edinburg June 22, 2017, pet. denied) (mem. op.). To have a valid consent judgment, each party must explicitly and unmistakably give its consent on the record indicating that the parties came to some agreement as to the disposition of the case. *See Sohocki v. Sohocki*, 897 S.W.2d 422, 424 (Tex. App.—Corpus Christi–Edinburg 1995, no writ); *DeClaris Assocs. v. McCoy Workplace Sols., L.P.*, 331 S.W.3d 556, 560 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Consent must exist at the exact moment the trial court renders judgment on the agreement of the parties. *Sohocki*, 897 S.W.2d at 424. To determine whether a divorce decree is a consent judgment, we construe the decree as a whole with an aim to harmonize and give effect to all that is written. *Durden v. McClure*, 281 S.W.3d 137, 141 (Tex. App.—San Antonio 2008, no pet.) (quoting *Wilde v. Murchie*, 949 S.W.2d 331, 333 (Tex. 1997)).

Here, both parties "approved and consented to" the final decree of divorce "as to both form and substance." *See Boufaissal v. Boufaissal*, 251 S.W.3d 160, 162 (Tex. App.—Dallas 2008, no pet.) ("Because her signature signifies her approval and consent to the terms of the agreed decree as to both form and substance, Wife waived the complaints she now attempts to raise on appeal."); *but see First Am. Title Ins. Co. v. Adams*, 829 S.W.2d 356, 364 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied) (holding that the phrase "approved as to form and substance," standing alone, does not transform a judgment into a consent judgment). In addition, the following appeared in the decree acknowledgment section:

> Petitioner, TERESA L. CAMPERO, and Respondent, ADALBERTO CAMPERO, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully

12

understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

Teresa also "agree[d] and stipulate[d] that there shall be no retroactive child support paid to either party." Teresa made further representations of her agreement as to the parties' tax liabilities. Notably, she also agreed to waive her right to appeal from the form and substance of the final decree of divorce. *See CQuentia Series Holdings, LLC v. Luminez Corp.*, 622 S.W.3d 607, 610 (Tex. App.—El Paso 2021, no pet.) (holding that a litigant's right to appeal from a judgment may be waived by agreement even when consent to the judgment is challenged). While Teresa unmistakably attempted to revoke her consent to the MSA, the record does not reflect that Teresa attempted to revoke her consent to the entry of the final decree of divorce. Therefore, in construing the decree as a whole, we conclude that the final decree of divorce was a valid consent judgment. *See Durden*, 281 S.W.3d at 142.

As to the validity of the MSA, we express no opinion. While we have performed our analysis operating under the assumption that the MSA was statutorily compliant, we would reach the same conclusion were it noncompliant. In that case, the MSA would be treated just like any other agreement incident to divorce. *See* TEX. FAM. CODE ANN. § 7.006; *Lee v. Lee*, 158 S.W.3d 612, 614 (Tex. App.—Fort Worth 2005, no pet.). The order signed by the trial court on July 24 rendering judgment on that MSA would be void, as Teresa had revoked her consent prior to its entry. *See Leal*, 892 S.W.2d at 857.

13

However, the parties still had the option to revise their agreement prior to the rendition of the divorce. *See* TEX. FAM. CODE ANN. § 7.006(a). The final decree of divorce would nevertheless be considered a consent judgment. Thus, because we conclude that the final decree of divorce is a consent judgment, Teresa has waived all non-jurisdictional error. *See Baw*, 949 S.W.2d at 766. We therefore hold that Teresa has waived the issues she has presented to this Court.

We overrule both of Teresa's issues.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
24th day of March, 2022.

14