Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

# OPINION

No. 04-10-00861-CV

Carl Martin **GAMBOA**, Lawrence Alexander Partnership, Lawrence Alexander Inc., Medical Center Southwest Ltd., Real Source Investments Inc., Rubicon, Rubicon Medical Group Inc., Unicorp, Unicorp Inc., U.S. Health Facilities Development Corp. d/b/a Southwest Physical Therapy, U.S. Health Facilities Development Corp., 10414 PBSA LLC, Potranco-Military LLC, 281 Celebration LLC, PCFG Partnership, Rubicon Capital LLC, Total Therapeutics, Unicor, and Unicor Inc.,
Appellants

v.

Patricia **GAMBOA**, Marco Gamboa, Brimex Limited Partnership; Brimex Living Trust, Brimex Trust, CGLimited Partnership; CG Living Trust; Carmarc Living Trust; Carmarc Limited; Caroline Brimex Remainder Trust; Marco Brimex Family Trust; Marco Brimex Remainder Trust; Marco Carmac Family Trust; Marco Carmarc Remainder Trust; Brimex Remainder Trust; CG Ramainder Trust; and Carmarc Remainder Trust,
Appellees

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-12287
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Phylis J. Speedlin, Justice

Delivered and Filed:  August 31, 2012

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

Carl Gamboa appeals the trial court's judgment in this divorce action filed by Patricia

Gamboa. When the divorce action was filed, the Gamboas' two children were minors. The

children are now adults. The Gamboas' divorce involved complicated issues related to the division of the marital estate. Numerous family trusts and business entities were joined as parties to the divorce action. Carl's brother, Marco Gamboa, served as trustee of the family trusts. The children were beneficiaries of the trusts.

After three days of trial before a jury, the parties reached an agreement that settled some of the property division issues in the case. The jury was discharged. Thereafter, the trial court held multiple hearings, and eventually signed a final divorce judgment. The final divorce judgment was later amended.

On appeal, Carl argues the trial court erred by (1) rendering judgment on the partial settlement agreement despite his revocation of consent to the agreement; (2) adding terms to the agreement; (3) finding that Marco remained the trustee of the family trusts; (4) refusing to appoint an attorney ad litem on behalf of the children; (5) concluding that Patricia had standing to sue the trusts; and (6) requiring Carl to indemnify Marco from future lawsuits when this was not part of the settlement agreement. We sustain Carl's first issue. We overrule Carl's third, fourth, and fifth issues. We do not address Carl's second and sixth issues because they are unnecessary to the disposition of this appeal. We affirm the judgment in part, reverse the judgment in part, and remand for further proceedings.

## BACKGROUND

In 1989, before he was married to Patricia, Carl created multiple trusts for the benefit of his future children. Carl's brother, Marco Gamboa, was appointed trustee of these trusts. In 1993, Carl married Patricia. In 2008, Patricia filed a petition for divorce. In her petition, Patricia alleged, among other things, that Carl had used the trusts and other business entities as devices to perpetuate fraud upon her. Patricia also alleged related claims for fraud, constructive fraud, and

alter ego against Carl and certain trusts, limited partnerships, and other business entities. Patricia joined Marco and the trusts in the divorce action.

Trial to a jury began on December 8, 2009. Patricia presented evidence to the jury for three days. This evidence was directed at determining the community or separate nature of the business entities and the division of the marital estate. Then, before Carl had presented any evidence to the jury, all parties announced in open court that they had reached an agreement. The terms of the agreement were read into the record by the trial court. While reciting the terms of the agreement into the record, the trial court referred to a document that listed the property to be awarded to each spouse. Many of the assets listed on the document belonged to Cosas Claras Ltd., a limited partnership owned by Carl and Brimex, Ltd.[1] After the trial court recited the terms of the agreement, Patricia's counsel and Carl's counsel stated they were in agreement with the terms read into the record. Thereafter, Marco's counsel mentioned other issues, including indemnifying Marco, dismissing other claims, and undisclosed assets. Carl's counsel mentioned dismissing other claims. The trial court then recessed for lunch.

Following the lunch recess, Patricia's counsel advised the trial court that the agreement reached by the parties failed to address all of the issues raised by the pleadings. The unaddressed issues included attorney's fees, taxes, child support, spousal support, health insurance for the children, the award of separate property, and the division of personal property—including bank accounts, automobiles, and furniture.

In response, the trial court refused to address attorney's fees because they were not part of the parties' agreement. The trial court inquired as to whether Carl would pay all income taxes as he had done in the past. Carl's counsel indicated Carl was no longer present in the courtroom. As a result, Carl's counsel stated he could not agree that Carl would assume liability for all

---

[1]Brimex, Ltd. is a limited partnership owned by some of the trusts in this case.

income taxes. However, Carl's counsel stated he would inquire about whether Carl would agree to do so. The trial court then ordered Carl to pay the income taxes. The trial court also awarded Patricia the car she was currently driving and ordered Carl to provide health insurance for the children. The trial court stated the temporary orders for child support and spousal support would remain in place while the parties finalized the settlement agreement and drafted the divorce decree.

Thereafter, the trial court instructed Patricia's counsel to draft the divorce decree, and Marco's counsel to draft the settlement agreement. The trial court directed counsel to complete the settlement agreement and divorce decree by January 11, 2010. The trial court stated it was "granting the divorce effective today." At the conclusion of the hearing, the trial court indicated the parties could return to the trial court if they were unable to resolve the remaining issues. The trial court then dismissed the jury.

On January 11, 2010, the parties and counsel appeared in court again. No reference was made to a draft settlement agreement. Instead, the trial court and the parties discussed several issues while referring to a draft divorce decree. The trial court ordered that Carl would pay the cost of health insurance for the children so long as Patricia did not have a job, and that the parties would pay one half each of the unreimbursed medical expenses. The hearing concluded before all of the issues in the draft divorce decree were addressed. The trial court continued the hearing, and reset the matter for February 10, 2010.

On February 10, 2010, Cosas Claras, one of the business entities joined as a party in the divorce action, filed for bankruptcy. Because of the automatic bankruptcy stay, the February 10, 2010, hearing did not take place as scheduled.

On May 10, 2010, Carl filed a document with the trial court clerk in which he revoked his consent to the settlement agreement that was read into the record on December 14, 2009. In the document, Carl explained his reasons for revoking his consent to the agreement, and asked the trial court to "go forth to trial if necessary."

On May 18, 2010, the bankruptcy stay was partially lifted, allowing the parties to return to the trial court to resolve the remaining issues in the divorce action.

On May 20, 2010, Marco filed a declaratory judgment action, seeking a determination that Marco was and continued to be the trustee of the trusts joined in the divorce action. Marco sought reasonable attorney's fees associated with the declaratory judgment action.

On July 26, 2010, the trial court held a hearing. At the hearing, the trial court addressed several matters, including Carl's revocation of consent to the agreement and Marco's request for declaratory judgment. During the hearing, the trial court inquired about Carl's reasons for revoking consent. In response, Carl's counsel explained Carl's reasons for revoking consent, but presented no evidence. The trial court heard evidence related to the declaratory judgment action. The trial court also heard argument and some evidence concerning attorney's fees. Specifically, Marco testified the trusts had incurred about $185,000.00 in attorney's fees, accounting fees, and other expenses during the course of the litigation.

At the conclusion of the hearing, the trial court stated it was denying Carl's request to revoke consent to the settlement agreement. The trial court granted Marco's request for declaratory judgment, finding Marco remained the trustee of the trusts. The trial court also ordered Carl to pay child support of $2,000.00 per month, ordered no spousal support, and ordered Carl to pay attorney's fees in both the declaratory judgment action and the divorce action. The trial court signed a judgment granting the divorce.

Carl filed a motion for new trial. Thereafter, the trial court signed an amended final divorce judgment, which included provisions declaring Marco the trustee of the trusts, and awarding Marco, in his capacity as trustee, $183,000.00 in attorney's fees, costs, and expenses. The amended final divorce judgment also awarded Patricia $126,000.00 in attorney's fees. Carl appealed.

### REVOCATION OF CONSENT TO THE SETTLEMENT AGREEMENT

In his first issue, Carl argues that the trial court erred in rendering judgment on the partial settlement agreement despite his revocation of consent to the agreement. Carl asserts he revoked his consent to the partial settlement agreement on May 10, 2010, and the trial court did not render judgment until July 26, 2010. Patricia counters the trial court did not err in rendering judgment on the parties' partial settlement agreement because Carl did not revoke his consent to the agreement until after the trial court rendered judgment.

A Rule 11 agreement is an agreement between parties or attorneys touching any pending suit that, to be enforceable, must be either (1) in writing, signed and filed as part of the record, or (2) made in open court and entered of record. TEX. R. CIV. P. 11. The purpose of Rule 11 is to avoid misunderstandings and controversies that often flow from oral agreements. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). A party may revoke his consent to settle a case any time before judgment is rendered. *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983); *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874-75 (Tex. 1982). Even if the parties entered into a valid Rule 11 agreement to settle a case, the parties must consent to the agreement at the time the trial court renders judgment. *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984). Although a party may have previously consented to the agreement, a consent judgment cannot be rendered when one party does not consent at the time judgment is actually

rendered. *Burnaman v. Heaton*, 240 S.W.2d 288, 291 (Tex. 1951). "When a trial court has knowledge that one of the parties to a suit does not consent to a judgment, the trial court should refuse to sanction the agreement by making it the judgment of the court." *Quintero*, 654 S.W.2d at 444 (citing *Burnaman*, 240 S.W.2d at 291).

A written settlement agreement may be enforced even though one party withdraws consent before judgment is rendered on the agreement. *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996); *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied). However, when consent has been withdrawn, a court may not render judgment on the settlement agreement, but may only enforce it as a written contract. *Mantas*, 925 S.W.2d at 658; *Staley*, 188 S.W.3d at 336. Thus, the party seeking to enforce the settlement agreement must pursue a separate breach of contract claim, which is subject to normal rules of pleading and proof. *Mantas*, 925 S.W.2d at 658; *Staley*, 188 S.W.3d at 336. When consent has been withdrawn, the only method available for enforcing a settlement agreement is through summary judgment or trial. *Staley*, 188 S.W.3d at 336 (citing *Mantas*, 925 S.W.2d at 658-59). A claim to enforce a disputed settlement agreement should be raised through an amended pleading or counterclaim asserting breach of contract. *Id.* (citing *Padilla*, 907 S.W.2d at 462). To allow enforcement of a disputed settlement agreement simply on motion and hearing would deprive a party of the right to be confronted by the appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury. *Id.* at 336-37 (citing *Cadle Co. v. Castle*, 913 S.W.2d 627, 632 (Tex. App.—Dallas 1995, writ denied)).

### Did Carl Revoke Consent Before or After Rendition of Judgment?

Here, the threshold issue is whether Carl revoked his consent before or after the trial court rendered judgment. Carl argues he revoked his consent before the trial court rendered

judgment on July 26, 2010. Patricia counters the trial court rendered judgment on December 14, 2009, emphasizing the trial court's oral pronouncement of divorce on December 14, 2009.

A rendition of judgment is the pronouncement of the trial court of its decision upon the matters submitted to it for adjudication. *Becker v. Becker*, 997 S.W.2d 394, 395 (Tex. App.—Beaumont 1999, no pet.); *Arriaga v. Cavazos*, 880 S.W.2d 830, 833 (Tex. App.—San Antonio 1994, no writ). The decision can be oral or written. *Becker*, 997 S.W.3d at 395; *Arriaga*, 880 S.W.2d at 833. Judgment is rendered when the decision is officially announced either orally in open court or by a memorandum filed with the clerk. *Becker*, 997 S.W.3d at 395; *Arriaga*, 880 S.W.2d at 833. In order to be an official judgment, the trial court's oral pronouncement must indicate an intent to render a full, final, and complete judgment at that point in time. *In re Marriage of Joyner*, 196 S.W.3d 883, 886 (Tex. App.—Texarkana 2006, pet. denied).

The record from the December 14, 2009, hearing fails to show the trial judge had the present intent to render judgment on December 14, 2009. Although the trial judge said she was "granting the divorce effective today" and "approv[ing] the settlement agreement," she also mentioned "get[ting] this final agreement done" and set a deadline for the parties to complete the agreement. She further advised counsel they could return to resolve any issues on which an agreement could not be reached. Thus, when considered as a whole, the trial judge's language fails to show a present intent to render a full, final, and complete judgment on December 14, 2009. *See James v. Hubbard*, 21 S.W.3d 558, 561 (Tex. App.—San Antonio 2000, no pet.) (concluding the language of the trial court during an oral pronouncement indicated an intent to approve the divorce settlement, but not a clear intent to render a full, final, and complete judgment).

Moreover, the record of the December 14, 2009, hearing shows that many issues essential to the divorce judgment were unresolved on December 14, 2009. These issues included conservatorship, possession and access, child support, medical support, and the division of community debts and liabilities. The records of the January 11, 2010, and July 26, 2010, hearings show the parties returned to the trial court to address these unresolved issues. Thus, when the trial court stated it was "granting the divorce" on December 14, 2009, the parties had neither agreed to, nor tried, all of the issues essential to this divorce action. Accordingly, the record shows the trial court had neither the present intent, nor the power, to render judgment on December 14, 2009. *See MacGillivray v. MacGillivray*, No. 04-10-00109-CV, 2011 WL 2150352, at \*4 (Tex. App.—San Antonio 2011, pet. denied) (holding trial court did not show an intent to render judgment when it stated that the parties were divorced before the jury had rendered its decision and before the trial court had decided the remaining issues); *Reppert v. Beasley*, 943 S.W.2d 172, 174 (Tex. App.—San Antonio 1997, no writ) (holding trial court was without power to render judgment on an agreement when at least one of the essential elements of the agreement was left undecided by the parties' agreement).

We conclude the trial court did not render judgment on December 14, 2009; rather, the trial court rendered judgment on July 26, 2010. Thus, when Carl revoked his consent on May 10, 2010, he did so before the trial court rendered judgment.

### Were the Merits of an Enforcement Action Adjudicated at the July 26, 2010, Hearing?

As Carl correctly argues, once he revoked his consent to the partial settlement agreement, the agreement could be enforced as a written contract only on proper pleading and proof. Patricia maintains the enforcement of the partial settlement agreement was adjudicated at the July 26, 2010, hearing. Patricia acknowledges no pleadings were filed asking the trial court to enforce the

partial settlement agreement; nevertheless, she suggests the enforcement issue was tried by consent.

Texas Rule of Civil Procedure 67 provides that "[w]hen issues not raised by pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *See* TEX. R. CIV. P. 67. Trial by consent is intended only in exceptional cases when the record as a whole clearly reflects that the parties tried the unpled issue. *In the Interest of S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.); *Pickelner v. Adler*, 229 S.W.3d 516, 523 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Trial by consent is applied with care, and in no event in a doubtful situation. *S.A.A.*, 279 S.W.3d at 856; *Pickelner*, 229 S.W.3d at 523. The question is whether the record shows evidence of trial of the issue, rather than evidence of the issue. *S.A.A.*, 279 S.W.3d at 856; *Pickelner*, 229 S.W.3d at 523.

Patricia asserts that the trial court heard argument and evidence regarding the enforceability of the partial settlement agreement at the July 26, 2010, hearing, and that this was sufficient to satisfy the specific requirements established by the Texas Supreme Court. *See Mantas*, 925 S.W.2d at 658-59 (providing that when consent to a settlement agreement is withdrawn, the party seeking enforcement must pursue a breach of contract claim subject to normal rules of pleading and proof); *see also Ayala*, 2010 WL 1438932, at *6 (holding trial court could not enforce agreement as a written contract in the absence of proper pleadings and proof). For support, Patricia cites *Ashmore v. Smith*, No. 03-03-00609-CV, 2004 WL 1171717, at *2-3 (Tex. App.—Austin 2004, pet. denied). However, *Ashmore* is distinguishable from the present case. First, one of the parties in *Ashmore* filed a motion requesting enforcement of the agreement. Second, the trial court in *Ashmore* heard argument and evidence on the enforcement

issue, and adjudicated the contractual defense raised by the revoking party. Here, by contrast, there was no semblance of trial of the enforcement issue at the July 26, 2010, hearing. The record shows little more than Carl's counsel explaining some of Carl's reasons for revoking consent to the partial settlement agreement, and the trial court summarily rejecting these reasons. We conclude the enforcement issue was not tried by consent at the July 26, 2010, hearing. *See Pickelner*, 229 S.W.3d at 523 (holding enforcement of an agreement was not tried by consent when neither party requested that the agreement be enforced as a contract despite knowledge that some of the parties would not abide by the agreement).

Because Carl revoked his consent before the trial court rendered judgment, the trial court could not render judgment on the partial settlement agreement unless and until it was enforced as a contract. This was not done. The trial court therefore erred in rendering judgment on the partial settlement agreement. Carl's first issue is sustained.[2]

## ADDITION OF TERMS TO THE SETTLEMENT AGREEMENT

Alternatively, in his second issue, Carl argues the trial court erred by adding terms to the final divorce decree that were not agreed to by the parties. Specifically, Carl challenges provisions in the final divorce decree (1) ordering the division of certain assets, (2) ordering Carl to assume liability for all income taxes, (3) ordering Carl to pay Patricia's and Marco's attorney's fees, and (4) ordering Carl and Patricia to indemnify Marco against any future claims

---

[2]Patricia also argues Carl's first issue should be overruled because Carl divested himself of the right to challenge the award of Cosas Claras's assets to Patricia by causing Cosas Claras to file for bankruptcy. Patricia argues the bankruptcy trustee, not Carl, now speaks solely on behalf of Cosas Claras. This argument, which is not supported by citation to authority, is waived. *See* TEX. R. APP. P. 38.1(i). Notwithstanding this waiver, Patricia's argument is without merit. Carl's relinquishment of control over Cosas Claras by placing it in bankruptcy had no bearing on whether the trial court could render judgment on the partial settlement agreement. Absent Carl's consent, the trial court had no authority to render judgment on the partial settlement agreement. Carl was a party to the divorce action, and his consent to the partial settlement agreement was essential.

brought by his children. In his sixth issue, Carl reiterates his argument that the trial court erred in ordering Carl and Patricia to indemnify Marco against any future claims brought by his children.

Because Carl's second and sixth issues are presented as alternative arguments, they are unnecessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1 (requiring appellate courts to hand down opinions that are as brief as practicable but address every issue raised and necessary to final disposition of the appeal).

### RULING ON TRUSTEE STATUS

In his third issue, Carl argues the trial court erred in ruling Marco was trustee of the family trusts. Marco's trustee status was the main issue presented in the declaratory judgment action, which was tried to the court at the July 26, 2010, hearing. The evidence showed that when the trust instruments were drafted in 1989, separate trustee resignation documents were also drafted. The resignation documents contained a place for the trustee's signature and a date. Marco signed the resignation documents in 1989, but he did not fill in the date. Marco assumed the duties of trustee in 1989, and continued to act in this capacity from 1989 until the time of the hearing.

Marco testified that on February 11, 2010, he signed an affidavit in which he revoked and cancelled any and all instruments in which he purported to resign as trustee of the trusts. The affidavit was filed in the county records on February 11, 2010. A copy of the affidavit was admitted into evidence.

Carl testified he started filling in the dates on the resignation documents on February 6, 2010, and he finished filling in the dates on the resignation documents on February 9, 2010. Carl further testified that on February 18, 2010, he signed documents in which he accepted Marco's

resignation documents and appointed himself as successor trustee of the trusts. After signing these documents, Carl filed them in the county records.

The Texas Trust Code provides that "[a] trustee may resign in accordance with the trust instruments, or a trustee may petition a court for permission to resign as trustee." TEX. PROP. CODE ANN. § 113.081(a) (West 2007). Construction of an unambiguous trust is a question of law for the court. *Soefje v. Jones*, 270 S.W.3d 617, 628 (Tex. App.—San Antonio 2008, no pet.); *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied). In construing a trust, we ascertain the intent of the grantor from the language in the four corners of the instrument. *Soefje*, 270 S.W.3d at 628; *Eckels*, 111 S.W.3d at 694.

Carl asserts, without citing any authority, that the resignation documents signed by Marco are part of the trust instrument. Marco counters the resignation documents are not part of the trust instruments. Marco further argues that none of the trust instruments address the procedure for the trustee's resignation, and therefore, Marco was required to petition the court for permission to resign as trustee.

Because the four corners of the trust instruments contain no provisions addressing the procedure for the trustee's resignation, Marco was required to petition the trial court for permission to resign as trustee. *See* TEX. PROP. CODE ANN. § 113.081(a). However, Marco never petitioned the trial court for permission to resign as trustee. Thus, the trial court properly determined that Marco was the trustee of the trusts. Carl's third issue is overruled.

### APPOINTMENT OF ATTORNEY AD LITEM FOR THE CHILDREN

In his fourth issue, Carl argues the trial court abused its discretion in denying his motion requesting the appointment of an attorney ad litem to represent his children based on their status as minors and trust beneficiaries. When Carl filed the motion, the divorce action had been

pending for over a year. The motion, which cited no authority for appointing an ad litem, was not presented until the day trial began. By the time Carl presented the motion, the oldest child was eighteen years old and the youngest child was sixteen years old.

We need not reach the merits of this issue. Because both children are now adults, this issue is moot. *See Kennedy v. Kennedy*, 125 S.W.3d 14, 22-23 (Tex. App.—Austin 2002, pet. denied) (holding that even when the trial court erred in delegating decisions concerning conservatorship, the issue was moot due to the age of the child). Carl's fourth issue is overruled.

### PATRICIA'S STANDING TO SUE THE TRUSTS

In his fifth issue, Carl argues the trial court erred in ruling that Patricia had standing to sue the trusts. The Texas Trust Code provides "any interested person may bring an action" under the statute. TEX. PROP. CODE ANN. 115.011(a) (West 2007). An "interested person" is defined as "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust. Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding." TEX. PROP. CODE ANN. 111.004(7) (West 2007).

Here, Patricia sued the trusts alleging they were Carl's alter ego, and were used to perpetuate fraud and to divest her of her share of the marital estate. Under these circumstances, the trial court correctly concluded Patricia was an "interested person" and was authorized to bring an action under the trust code. *See id*. Carl's fifth issue is overruled.

### NEW ISSUES RAISED IN REPLY BRIEF

In his reply brief, Carl argues, among other things, that the trial court erred in ordering him to pay Marco's and Patricia's attorney's fees because the fees were not segregated, and the

evidence was not specific enough to support an award of attorney's fees to Marco. No issues concerning the segregation of attorney's fees, or the sufficiency of the evidence to support an award of attorney's fees to Marco were raised in Carl's opening brief. A reply brief may not be used to raise new issues. *Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied); *see also* TEX. R. APP. P. 38.3 (providing an appellant may file a reply brief addressing any matter in the appellee's brief). We, therefore, need not address Carl's issues concerning attorney's fees because they were raised for the first time in a reply brief. *See Lopez*, 131 S.W.3d at 61.

## CONCLUSION

The only issue we sustain on appeal affects the division of property. The Texas Rules of Appellate Procedure provide that if an error affects part but not all of the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error. TEX. R. APP. P. 44.1(b); *see also Brown v. Brown*, 917 S.W.2d 358, 363 n.4 (Tex. App.—El Paso 1996, no writ) (recognizing that an appellate court may sever and reverse one portion of a divorce decree while affirming the remainder).

Thus, in accordance with Rule 44.1(b), we reverse the trial court's final divorce judgment with respect to the division of property, including the award of attorney's fees to Patricia and the indemnification provisions. *See* TEX. R. APP. P. 44.1(b). We remand this cause to the trial court for further proceedings without prejudice to the parties' right to seek or to avoid the enforcement of the partial settlement agreement as a contract. We affirm the trial court's divorce judgment in all other respects, including the granting of the divorce and the orders concerning conservatorship, possession and access, child support, and medical support.

We affirm the trial court's declaratory judgment and the related award of attorney's fees to Marco.

Karen Angelini, Justice