

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00470-CV

———————————————————

SANDRA L. SARGENT, Appellant

V.

DAVID L. SARGENT, Appellee

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-677002-20

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

In this appeal of a divorce decree between Appellant Sandra L. Sargent and Appellee David L. Sargent, Sandra[1] contends that the trial court did not render a full and complete judgment after the parties reached an agreement at trial, and therefore, she could revoke consent before the decree was signed. We conclude that the trial court rendered judgment prior to Sandra's attempt to revoke consent and that any attempt to revoke consent was consequently untimely. Therefore, we will affirm.

### II. BACKGROUND

**A. After filing cross-petitions for divorce, the parties reach an agreement at the trial; the trial court "renders judgment" after the agreement is put on the record; and the agreement is filed as a "Judge's Order" after being signed by the parties and the trial court.**

After almost thirty-eight years of marriage, the parties filed cross-petitions for divorce. The trial to the bench began on April 22, 2024, but the parties reached an agreement during the lunch recess. After the agreement was read into the record, Sandra and David both testified and confirmed the agreement. At the conclusion of the testimony, the trial court stated that:

- it "will adopt the agreement the parties have entered into";

- Sandra's attorney "will prepare the final order for the Court's approval";

---

[1]Because they share the same surname, we will refer to the parties by their first names.

- "that will be the order of the Court"; and

- it "will grant [the] divorce based on insupportability and the Court will accept the agreement the parties have entered into, just in case I didn't do it. And this will be the order of the Court."

Then, in response to David's attorney asking, "And you've rendered that today, correct?" the trial court stated, "And I've rendered that today, yes, yes, yes."

Sandra, David, and their attorneys signed a copy of the agreement which contained the provisions read into the record. That document, entitled "Judge's Order," was signed by the trial court on April 22, 2024, and file-marked on April 25, 2024.

**B. David's attorney files a motion to sign a final decree; and Sandra files a response, motion to revoke consent, and motion for new trial.**

In June 2024, David filed his "Motion to Sign Final Decree of Divorce," attaching a proposed Final Decree of Divorce.[2] Sandra filed a response, pointing out certain "discrepancies between the 'Judge's Order' of April 24, 2024 and the Final Decree of Divorce submitted with [David's] motion." Several weeks later, Sandra filed her "Motion to Revoke Consent to Agreement Incident to Divorce and Motion for New Trial."

---

[2]Sandra's attorney was supposed to prepare the final decree. After the parties testified about the agreement at the April trial, the trial court asked Sandra's attorney to "prepare the final order for the Court's approval," and her attorney responded that he would. According to David, his attorney drafted and filed the final divorce decree after Sandra's attorney failed to draft the decree and, instead, filed a motion to withdraw.

3

**C. The trial court makes changes to the proposed decree, denies the motion to revoke consent, signs the decree, and enters findings of fact and conclusions of law.**

At a hearing on the motions, the trial court struck several provisions in the proposed divorce decree, denied the motion to revoke consent, and signed the divorce decree on October 9, 2024. Sandra requested findings of fact and conclusions of law, which the trial court entered. This appeal followed.

## III. DISCUSSION

In three issues, Sanda contends that (1) the trial court did not exhibit a present intent to render judgment at the April 22, 2024 trial; (2) the trial court could not have rendered judgment on April 22, 2024, because a full, final, and complete judgment was not rendered until October 9, 2024; and (3) the trial court's judgment is void because Sandra revoked her consent to the agreement prior to rendition. David responds that the trial court rendered judgment on April 22, 2024, pursuant to the parties' agreement; that the agreement was a "just and right" division supported by the trial court's findings; and that Sandra's attempt to revoke consent was untimely.

**A. Did the trial court exhibit a present intent to render judgment at the April trial?**

Rendition is one of three phases of reducing a decision to a judgment. These phases have been described by the Texas Supreme Court as follows:

> Reducing a decision to final judgment has three phases: (1) rendition; (2) signing; and (3) entry. Rendition and signing are judicial acts that can, but need not, occur at the same time. Entry, on the other hand, is a clerical act undertaken by the clerk of the court. A judgment's

4

"rendition" is "the judicial act by which the court settles and declares the decision of the law upon the matters at issue." Rendition of judgment requires a present act, either by spoken word or signed memorandum, that decides the issues on which the ruling is made. If the judge's words only indicate an intention to render judgment in the future or to provide guidelines for drafting a judgment, the pronouncement cannot be considered a present rendition of judgment.

Words reflecting the judge's present declaration of a decision are necessary, but not sufficient, to effect the rendition of a judgment. "Generally, a judgment is rendered when the decision is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly."

*Baker v. Bizzle*, 687 S.W.3d 285, 291–92 (Tex. 2024) (footnotes omitted); *see S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (stating that "[t]he words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed" (quoting *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex. 1976) (orig. proceeding))). Here, the only phase of reducing a decision to judgment that we are concerned about is rendition because a judgment is effective when it is rendered. *See Est. of Williams*, No. 09-23-00019-CV, 2024 WL 5384669, at *2 (Tex. App.—Beaumont Feb. 6, 2025, no pet.) (mem. op.). In reviewing this phase, the critical inquiry concerns the trial court's use of language indicating a present intent to render a full, final, and complete decision. *See Baker*, 687 S.W.3d at 292.

Whether a particular action constitutes a rendition of judgment is a question of fact. *In re M.G.F.*, No. 2-07-241-CV, 2008 WL 4052992, at *2 (Tex. App.—Fort Worth Aug. 28, 2008, no pet.) (per curiam) (mem. op.); *see Caudillo v. Caudillo*, No. 07-19-00198-CV, 2020 WL 1980524, at *2 (Tex. App.—Amarillo Apr. 24, 2020, no pet.)

5

(mem. op.). When a trial court makes findings of fact, its findings are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *M.G.F.*, 2008 WL 4052992, at \*2 (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). Here, the trial court made findings of fact, including the following:

> 7. When trial resumed, the parties announced that agreement on all issues had been reached.
>
> 8. The agreement was read into the record and affirmed by the testimony of the parties.
>
> 9. The parties requested that the Court accept the agreement, finding it to be just and right.
>
> 10. The parties requested that the Court render judgment on the agreement, approving the terms of the agreement, finding the division of the community assets and liabilities to be just and right, and granting the divorce.
>
> 11. The Court rendered judgment on the agreement, approved the terms of the agreement, found the division of the community assets and liabilities to be just and right, and granted the divorce.

In its conclusions of law, the trial court stated that "the agreements were in force and effect at the time of rendition," it "adopted the agreement of the parties as an Order of the Court," it "rendered judgment on the evidence presented," "[t]he [c]ourt's rendition and Judge's Order was effective and [a] final judgment upon entry," and "[t]he signing of a Decree [wa]s a ministerial act which does not affect the judgment entered by the Court."

6

Disputing that judgment was rendered at the April trial, Sandra focuses on the use of the word "will" when the agreement was read into the record:

- Sandra "will receive" the marital residence;

- Sandra "will receive" 100 percent of her 401(k), $750,000 of David's 401(k), the 2019 Mercedes, life insurance in her name, household furniture, furnishings with the exception of David's guns, the liability for her credit cards, her attorney's fees, and property taxes and other debts and liabilities associated with any property awarded to her;

- David "will be awarded" the Dallas condominium "with all attendant debt and liability," the balance of his 401(k), and 100% of Sargent Law;

- David "will be awarded" the Comerica account, the 2018 Ford Escape, life insurance in his name, household furniture and furnishings in his possession, and the guns in Sandra's possession; and

- David's liabilities "will include" his credit cards, attorney's fees, and any debt on assets awarded to him.

Sandra further highlights the trial court's use of the word "will" when it stated that the court "will adopt the agreement," that the agreement "will be the order of the Court," that the court "will grant [the] divorce based on insupportability," that the court "will accept the agreement the parties have entered into," and that Sandra's attorney "will prepare the orders." Sandra contends that the use of the term "will" evidences a future, rather than a present, intent to render judgment.

To a limited extent, that is correct. "[T]he words 'I *am going* to grant the divorce in this case,' and the words, 'The Court *will* approve the agreement, and I *will* sign a written order to that effect,' standing alone, do not indicate a present rendition

7

of judgment." *Araujo v. Araujo*, 493 S.W.3d 232, 236 (Tex. App.—San Antonio 2016, no pet.) (quoting *James v. Hubbard*, 21 S.W.3d 558, 561 (Tex. App.—San Antonio 2000, no pet.)). Moreover, a trial court's use of the words "will approve" and "will sign" indicate an intent to render judgment in the future. *M.G.F.*, 2008 WL 4052992, at *3; *see Cook v. Cook*, 243 S.W.3d 800, 801 (Tex. App.—Fort Worth 2007, no pet.) (concluding that judgment was not rendered at hearing when trial court stated, "[u]pon submission of the final decree and signed by the Court, the divorce will be granted at that time, not today"); *but see Baize v. Baize*, 93 S.W.3d 197, 200 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (concluding that judge's statement "I'll grant your divorce today" was found to be sufficient rendition of judgment).

Here, however, the word "will" did not stand alone, as additional evidence supported the fact that the trial court intended to render judgment at the April trial. *See Araujo*, 493 S.W.3d at 237 ("Evidence beyond the words of the trial court at the time of the alleged judgment, such as later statements and writings by the court, is not controlling, but such evidence may be considered in ascertaining whether the trial court intended to render judgment at the time of the alleged oral rendition."). Focusing only on the use of the word "will" ignores (1) the later statement by the trial court that it had "rendered" judgment that day and (2) the "Judge's Order" setting out the agreement of the parties that was signed by the parties and the trial court the same day and filed-marked three days later. A case closely analogous to this case is

8

*Blackburn v. Blackburn*, No. 02-12-00369-CV, 2015 WL 2169505 (Tex. App.—Fort Worth May 7, 2015, no pet.) (mem. op.).

In *Blackburn*, a husband and wife mediated their divorce, entered into a mediated settlement agreement dividing their property and setting forth conservatorship and support of their minor child, and filed the agreement with the court the following day. *Id.* at *1. Almost two weeks later, the wife testified in court about the agreement and asked the trial court to approve the agreement and grant the divorce. *Id.* at *2. At the conclusion of the parties' testimony, the trial court stated, "All right. I'm going to grant the divorce pursuant to the terms and provisions of the [agreement] that's been stated herein today, and I will sign the Decree upon presentment." *Id.*

Later, the wife appealed and argued that the trial court had not rendered judgment at the initial hearing proving up the agreement. *Id.* at *3. She asserted that the language used by the trial court at the conclusion of that hearing was not a clear statement of a present intent to render judgment. *Id.* at *6. In deciding the issue, we looked at the statements made by the parties and the trial court at the hearing, including the following exchange: "Q. Are you asking the court to approve the [agreement] – approve the agreement you made with your husband about your assets, liabilities, and your child, and grant a divorce? A. Yes." *Id.* at *7. We also looked at the trial court's language at the hearing and in its docket entry. *Id.* In light of all of these things, we stated, "When considered within the context of [wife's] testimony, we

9

conclude that the trial court's language shows a present intent to render a full, final, and complete judgment on [the day of the original hearing]." *Id.*

Here, at the April trial, the following exchange occurred between David and his attorney after the settlement agreement was read into the record:

Q. You've heard what I recited to be the agreement of the parties for the division of the community estate, have you not?

A. Yes, ma'am.

Q. You've read it. In fact, sir, your signature is on this document, correct?

A. Yes, ma'am.

Q. Do you believe this to be just, right, and equitable?

A. Yes, ma'am.

Q. Are you asking the Court to approve it?

A. Yes, ma'am.

Sandra was called next as a witness and testified as follows:

Q. And you've had a chance to read the agreement and talk with me about it, and after that you have agreed to the division of property and the other provisions contained in this agreement, correct?

A. Yes.

Q. Okay. And you're asking the Court to adopt this agreement as the order of the Court?

A. Yes.

This language, coupled with the trial court's statements that judgment was rendered that day and the fact that the agreement was signed by the trial court and the parties and file-marked as the "Judge's Order," evidences a present intent by the trial court to render judgment on April 22, 2024. *See id.* The trial court's findings and conclusions further support the fact that rendition occurred on that day. We overrule Sandra's first issue.

## B. Was the April rendition a full, final, and complete judgment?

In her second issue, Sandra contends that a "full, final, and complete judgment could not have been rendered on April 22, 2024, because the trial court failed to find that the terms of the agreement were just and right, the final decree included provisions not contemplated by the agreement, and the parties negotiated substantive issues pertaining to the judgment on October 4, 2024, upon which [the] trial court made rulings." David responds that the "trial court rendered a full, final, and complete judgment on April 22, 2024, because the parties stipulated that the terms of the agreement were just and right, and the provisions included in the final decree not expressly read into the record did not change material terms of the agreement but effectuated the implementation of the agreement."

### 1. Did the trial court find that the terms of the agreement were just and right?

At the April trial, after an agreement was announced, David's attorney read the agreement into the record:

This is Cause 231-677002-20; In the Matter of the Marriage of Sandra Lynn Sargent and David L. Sargent. The parties have agreed that the divorce will be granted on the basis of irreconcilable differences. There are no minor children of the marriage so a just, right, and equitable division of the community estate is as follows as agreed between the parties: Mrs. Sargent will receive the marital residence at 1503 Norwich Court, Southlake, Texas, with all attendant debt and liability in as-is condition.

She will receive 100 percent of her 401(k); additionally, $750,000 of Mr. Sargent's 401(k); all of the Wells Fargo accounts with the exception of the children's accounts which will be awarded to the children; the 2019 Mercedes; life insurance in her name; household furniture, furnishings with the exception of Mr. Sargent's guns in her possession; the liability for her credit cards, her attorney's fees, and property taxes and other debts and liabilities associated with any property awarded to her.

Mr. Sargent will be awarded the condominium at 4419 Holland Avenue, Dallas, Texas - - it is number 107 - - with all attendant debt and liability. He'll be awarded the balance of his 401(k). He'll be awarded a hundred percent of Sargent Law including assets, accounts, any type of intellectual property, anything associated with Sargent Law.

He will be awarded the Comerica account, the 2018 Ford Escape, life insurance in his name, household furniture and furnishings in his possession, and the guns currently in his wife's possession. His liabilities will include his credit cards and his attorney's fees and any attendant debt on any assets awarded to him.

The parties agree to partition income as of April the 21st, 2024. What that means is the joint account is awarded to Ms. Sargent but Mr. Sargent will no longer be depositing his income into it.

. . . .

And, Judge, we believe that is a just - - based upon the agreements of the parties, believe it's a just and right division of the community estate and would ask the Court to approve it.

12

After the agreement was read into the record, David testified that the settlement was "just, right, and equitable" and asked the court to approve it. In addition, Sandra testified that she had agreed to the division of their property, and she also asked the court to approve the agreement and to adopt it as an order of the court.

Moreover, the trial court's findings of fact and conclusions of law included express determinations that, on April 22, 2024, it found that the "division of the community assets and liabilities [was] just and right" and that the "evidence and testimony of [Sandra] and [David] supported the division of the community assets as just and right." To make the determination of a just and right division,[3] the trial court stated in its findings and conclusions that it considered, among other things, the following factors: (a) the testimony offered by the witnesses; (b) the agreement reached by the parties and counsel of record at the time of trial and read into the record; (c) the written agreement of the parties that was signed by the parties, counsels of record, and trial judge; (d) the testimony by the parties regarding their understanding and acceptance of the agreement reached on the day of trial; (e) the parties' voluntary agreement as to the division of the marital estate based upon documents provided in discovery and exhibits prepared for trial; (f) the parties'

---

[3]Unlike other settlement agreements in the family law context, the trial court is not required to determine if an agreed property division is "just and right" before approving a mediated settlement agreement that satisfies the statutory requirements. *Glynn v. Glynn*, 651 S.W.3d 348, 354 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *see* Tex. Fam. Code Ann. § 6.602(b), (c).

13

agreement regarding the value of the assets and the estate in their agreement for the division of the community estate; (g) the parties' agreement as to the character of the estate in their agreement for the division of the community estate; and (h) the parties' agreement that the division of the estate was just and right.

The trial court did not need to independently determine that the property division was just and right when the parties agreed that it was. *See Kramer v. Kastleman*, No. 03-13-00133-CV, 2017 WL 5119211, at *4 (Tex. App.—Austin Nov. 3, 2017, pet. denied) (mem. op.) (concluding that appellant failed to meet burden to prove that evidence was legally insufficient to support trial court's findings that agreement was just and right when parties stipulated that property division was fair and just and trial court's findings of fact and conclusions of law included "express determinations that the settlement terms were fair, equitable, just and right"); *see also Comerio v. Comerio*, No. 04-13-00493-CV, 2014 WL 2547607, at *1–2 (Tex. App.—San Antonio June 4, 2014, no pet.) (mem. op.) (concluding that Texas Family Code Section 6.604 does not require trial court to make express finding of just and right on record). Here, considering the agreement testified to on the record by the parties and the trial court's findings of fact and conclusions of law, we conclude that the trial court determined that the agreement was just and right. This first subissue of Sandra's second issue is overruled.

**2.** **Did the final decree include provisions not contemplated by the agreement?**

According to Sandra, the final divorce decree included the following items not previously agreed to in the April agreement:

- Sandra's and David's bonuses from Sargent Law;

- Sandra's and David's interests in their respective travel/hotel reward benefits;

- A provision related to liability for income taxes through December 31, 2023, with an indemnification provision;

- A provision containing a prospective indemnification between the parties for their 2024 federal income taxes; and

- A provision allocating the exclusive use of Sandra's and David's credit cards and enjoining one party from incurring debt on a credit card allocated to the other party.

David disagreed, stating that "the variances do not alter the terms of the rendition but are specifications in line with the parties' intent in the agreement." He responded to each of Sandra's listed items of contention as follows:

- Because the parties agreed to partition their income as of April 21, 2024, each party would be granted his or her own bonus from their employment;

- Because the parties agreed that each party would be granted all property in his or her own possession, each would likewise be granted his or her respective travel/hotel reward benefits;

- The trial court struck the indemnification provisions regarding liability for income taxes through December 31, 2023 and for 2024; therefore, they are not an issue;

15

- With regard to the provision regarding their 2024 federal income taxes, the provision in the decree aligns with the parties' agreement to partition incomes beginning on April 21, 2024, and merely provides terms to effectuate and implement the agreement; and

- The provision allocating the exclusive use of the credit cards and enjoining one party from incurring debt on a card granted to the other party is included to effectuate and implement the terms of their agreement to grant each party the credit cards in his or her own name.

Therefore, we must decide if the final decree of divorce did not properly conform to the parties' earlier agreement because essential or material issues remained pending when the agreement was made.[4] *See McShane v. McShane*, 556 S.W.3d 436, 442 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (stating that a trial court's oral pronouncement does not constitute a rendition of judgment "if essential issues remain pending" when the pronouncement is made); *see also In re Rivkin*, No. 05-20-00124-CV, 2020 WL 2316071, at *2 (Tex. App.—Dallas May 11, 2020, orig. proceeding) (mem. op.) ("Regardless of the language used and the trial court's pronouncements, judgment is not rendered unless the trial court acts with the present intent to render a full, final, and complete judgment that resolves all issues."); *McLendon v. McLendon*, 847 S.W.2d 601, 606 (Tex. App.—Dallas 1992, writ denied) ("The law does not require the parties to dictate and agree to all of the provisions to be contained in all of

_____

[4]In her reply brief, Sandra states that she "is not asking this Court to reverse because there were substantive issues ruled on by the trial court at the entry hearing." Instead, she presents these issues "as evidence that the trial court could not have rendered a full, final, and complete judgment at the April 22, 2024 hearing."

16

the documents necessary to effectuate the purposes of the agreement; it only requires the parties to reach an agreement as to all material terms of the agreement.").

One of our sister courts summarized the law regarding when a trial court can enforce and modify agreements between parties:

"A final agreement which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement." *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976). A judgment is not in strict or literal compliance if it improperly removes or adds material terms. *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006). The material terms of an agreement are determined on a case-by-case basis. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016); *see also In re J.P.*, No. 13-18-00648-CV, 2020 WL 103858, at *5 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, pet. denied) (mem. op.). But generally, the material terms are those that the parties would reasonably regard as the vitally important ingredients of their bargain. *Fischer*, 479 S.W.3d at 237. A trial court abuses its discretion by entering a judgment that departs from these terms. *See Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.).

Occasionally, a trial court may alter the terms of a Rule 11 agreement, but the ability to do so depends on "the parties' intent as depicted by the language of the agreement." *In re G.D.H.*, 366 S.W.3d 766, 770 (Tex. App.—Amarillo 2012, no pet.); *see Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.). For instance, "[t]he law does not require that the parties agree to all of the terms necessary to effectuate the purposes of the agreement; it is necessary only that the parties reach an agreement as to all material terms." *Glynn*[, 651 S.W.3d at 354]. "A trial court may modify the terms of a settlement agreement as long as the modifications do not add terms the parties have not agreed to, significantly alter the original terms, or undermine the intent of the parties." *Id.* "If the decree adopts mechanisms to enforce the parties' agreement while remaining consistent with their intent, it is enforceable." *Id.* at 354–55; *see also Kramer*[, 2017 WL 5119211, at *9] ("[W]e conclude that the divorce decree did not add material terms to the settlement agreement or conflict with the parties' intent but instead added clarifying terms

17

necessary to effectuate the purpose of the settlement agreement based on agreement in open court.").

*In re Marriage of Mann*, No. 13-21-00442-CV, 2023 WL 403004, at *2–3 (Tex. App.—Corpus Christi–Edinburg Jan. 26, 2023, no pet.) (mem. op.). Considering this legal framework, the inquiry here is not whether the divorce decree varies from the terms of the April agreement but rather whether any variances in the decree significantly alter the parties' agreement in a way that deviates from their intent as manifested in the agreement—whether any changes were material. *See Glynn*, 651 S.W.3d at 354.

As outlined above, Sandra points to several specific provisions in the decree that she contends vary from the April agreement. First, she argues that she and David had no agreement regarding the division of their bonuses from Sargent Law. At the April trial, the parties "agree[d] to partition income as of April the 21st, 2024." The October divorce decree stated that Sandra was "awarded . . . as her sole and separate property" her "bonus, if any, from Sargent Law." Similarly, the divorce decree awarded David his "bonus, if any, from Sargent Law." From the parties' agreement to "partition income" as of April 21, 2024, it reasonably followed that the parties would receive their own bonuses thereafter.[5] Therefore, the decree remained consistent with the parties' intent. *See Haynes v. Haynes*, 180 S.W.3d 927, 930 (Tex. App.—Dallas 2006, no pet.).

---

[5] At the April trial, the trial court admitted into evidence Sandra's inventory and appraisement exhibit. It listed the bonuses due Sandra and David that were to be paid in July 2024 and December 2024.

18

Sandra next argues that the final divorce decree included their interests in their respective travel/hotel reward benefits even though those items were not specifically addressed in the agreement. At the April trial, the parties did not testify about these benefits, but exhibits were admitted that included them. Specifically, Sandra's inventory and appraisement exhibit listed "Travel Award Benefits (includ[ing] frequent-flyer mileage accounts)," and Sandra's proposed property division exhibit listed "AA Travel Rewards" and "Hotel Membership Points."[6] While Sandra's proposed property division exhibit placed a value of $5,227,978.18 on the marital estate, there was no value listed for the travel/hotel reward benefits on either the inventory and appraisement or the proposed property division. Therefore, we cannot conclude that the travel/hotel reward benefits were material terms of the settlement agreement. *See Mann*, 2023 WL 403004, at *2 (stating that material terms of an agreement are determined on a case-by-case basis and are those that the parties would reasonably regard as the vitally important ingredients of their bargain); *see also Wallace v. McFarlane*, No. 01-10-00368-CV, 2013 WL 4507843, at *8–9 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet.) (mem. op.) (stating that a trial court may modify the terms of a settlement agreement as long as the modifications do not add terms the parties have not agreed to, significantly alter the original terms, or undermine the

---

[6]Sandra's first admitted exhibit was her "Summary of Requested Relief." While it referenced numerous specific items, it did not list the travel/hotel reward benefits. It did reference the proposed property division exhibit, asking that the community estate be divided as listed on it.

19

intent of the parties); *Glynn*, 651 S.W.3d at 354. The addition of these items in the final decree is consistent with the parties' intent as depicted by the language of their agreement. *See G.D.H.*, 366 S.W.3d at 770.

With regard to the indemnification provision regarding liability for income taxes through December 31, 2023, and for 2024, the parties never made this agreement, and the trial court struck these provisions from the October decree. Therefore, there is no variance in the decree as compared to the April agreement. *See Glynn*, 651 S.W.3d at 354.

As to the credit card provision, the parties agreed at the April hearing and in the "Judge's Order" that Sandra's credit cards were her "liability" and that David's credit cards were his "liability." The decree provided that each party was "granted exclusive use of" his or her credit cards and that the opposing party was "enjoined and prohibited from using or incurring any indebtedness" on the other's cards. This provision in the decree is consistent with the intent as manifested in the April agreement. *See id.*

Therefore, we conclude that the final divorce decree contained only those terms that were necessary to effectuate or implement the parties' earlier agreement. *See McLendon*, 847 S.W.2d at 606. Therefore, the trial court rendered a full, final, and complete judgment at the April trial. Sandra's second issue is overruled.

20

## C. Is the final divorce decree void because Sandra timely revoked consent?

In her third issue, Sandra contends that the trial court's final divorce decree is void because she revoked her consent prior to rendition.

Parties must consent to an agreement at the time the trial court renders judgment. *Gamboa v. Gamboa*, 383 S.W.3d 263, 269 (Tex. App.—San Antonio 2012, no pet.). The Texas Family Code provides that consent to an agreement can be revoked prior to rendition:

> To promote amicable settlement of disputes in a suit for divorce or annulment, the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse. The agreement may be revised or repudiated before rendition of the divorce or annulment unless the agreement is binding under another rule of law.

Tex. Fam. Code Ann. § 7.006(a).

Here, Sandra did not revoke consent until three months after the April rendition. Because we have concluded that the trial court rendered judgment at the April trial and that the final divorce decree did not vary materially from the April rendition, Sandra's attempt to later revoke consent was ineffective. *See Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983) (holding that "a party has the right to revoke his consent at any time before the rendition of judgment"); *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874–75 (Tex. 1982) (similar); *see also Longhorn Tejas Prop. Builders LLC v. VGB San Diego LLC*, No. 04-24-00216-CV, 2025 WL 1452563, at *3 (Tex. App.—San Antonio May 21, 2025, no pet.) (mem. op.) (stating

21

that when one party revokes its consent to a settlement, the crucial question is whether it did so before or after the trial court rendered judgment on the agreement). Accordingly, Sandra's third issue is overruled.[7]

## IV. CONCLUSION

Having overruled all three issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: September 11, 2025

---

[7]David has added a fourth issue to his brief: "Public policy supports affirming the trial court's judgment in this case." We need not address this issue based on our ruling on Sandra's three issues. *See* Tex. R. App. P. 47.4.